**C. I. WHITTEN TRANSFER COMPANY, Inc. and Baggett Transportation Company, Plaintiffs,**

**v.**

**UNITED STATES of America and the Interstate Commerce Commission, Defendants, and C. E. Lizza, Inc., Intervening Defendant.**

**Civ. A. No. 2759.**

United States District Court, S. D. West Virginia, Huntington Division.

July 13, 1971.

Charles F. Dodrill, Dodrill & Dodrill, Huntington, W. Va., Robert E. Joyner, Memphis, Tenn., for plaintiffs.

Leo J. Meisel, Asst. U. S. Atty., Huntington, W. Va., James F. Tao, Dept. of Justice, Washington, D. C., for the Interstate Commerce Commission.

Milton T. Herndon, Campbell, Woods, Bagley, McNeer & Herndon, Huntington, W. Va., Henry M. Wick, Jr., Wick, Vuono & Lavelle, Pittsburgh, Pa. for C. E. Lizza, Inc.

Before BOREMAN, Circuit Judge, and CHRISTIE, and WIDENER, District Judges.

WIDENER, District Judge:

C. E. Lizza, Inc. (Lizza), the intervening defendant and applicant, is a contract motor carrier of Greensburg, Pennsylvania, which has hauled explosives for American Cyanamid and its predecessors for more than 32 years. It has hauled for no other shipper than American Cyanamid, and presently hauls more than 95% of the explosives shipped by American Cyanamid. During the 32-year period it had no accident involving explosives, and American Cyanamid is obviously pleased with the service rendered by Lizza.

Prior to the order here under review, the I.C.C. certificate issued to Lizza only authorized the transportation of explosives and related commodities between the facilities of American Cyanamid at New Castle, Latrobe, and Pottsville, Pennsylvania and points in 43 states. On or about June 15, 1969, American Cyanamid ceased the production of dynamite at New Castle, Pennsylvania and began purchasing dynamite from facilities of Hercules, Inc., located at or near Carthage, Missouri, McAdory, Alabama, and Kenvil, New Jersey. American Cya-

namid still maintains storage facilities at New Castle, Latrobe, and Pottsville, Pennsylvania.

On July 14, 1969, Lizza applied to the I.C.C. for authority to serve American Cyanamid from the three new origins to 41 of the states formerly served from the three locations in Pennsylvania. American Cyanamid, desiring to have the continued services of Lizza, supported the application. Baggett Transportation Company (Baggett), C. I. Whitten Transfer Company (Whitten), and Seeger Brothers Corporation (Seeger) each filed protests to Lizza's application and each requested an oral hearing on the matter.

On September 29, 1969, the Secretary of the I.C.C. directed that Lizza's application be handled under the I.C.C.'s modified procedure as provided for by I.C.C. General Rules of Practice, Rules 45–54 inclusive (49 C.F.R., § 1100.45–1100.54 inclusive).

On March 5, 1970, I.C.C. Review Board Number 2 granted Lizza's application. C. E. Lizza, Inc., Extension—Carthage, Mo., Docket No. MC–48213, sub. 29, 112 M.C.C. 71. On June 19, 1970, Division 1 of the Commission, acting as an Appellate Division, refused to reopen the proceeding for reconsideration or for oral hearing.

The plaintiffs, Whitten and Baggett, bring this action pursuant to 28 U.S.C., §§ 1336, 1398, and 2321–2325, to enjoin, annul, suspend and set aside the order of the I.C.C. A three-judge district court was convened pursuant to 28 U.S.C., § 2284. Seeger sought no reconsideration or review of the I.C.C. decision.

The plaintiffs' complaint alleges that the I.C.C. erred in the disposition of Lizza's application in the following manner:

"1. In refusing to order an oral hearing.

"2. In making findings of fact in an absence of appropriate evidence to sustain such findings.

"3. In making conclusions in the absence of appropriate findings to support the same.

"4. In concluding that the grant of the subject application would be consistent with the public interest and the National Transportation Policy in the absence of there having been appropriate evidentiary bases upon which to bottom such a conclusion."

In the opinion of the court, allegations 2, 3, and 4 collectively challenge the substantiality of the evidence supporting the I.C.C.'s decision and will be treated as such a challenge. In their brief, the plaintiffs additionally allege that the I.C.C. decision in the present application is not consistent with prior decisions and therefore arbitrary.

## SCOPE OF THE COURT'S REVIEW

In Illinois C.R. Co. v. Norfolk & W.R. Co., 385 U.S. 57, at 66, 87 S.Ct. 255, at 260, 17 L.Ed.2d 162, (1966), the Supreme Court set out the standard of review which this court must apply in this case, stating:

"The test on judicial review is, of course, whether the action of the Commission is supported by 'substantial evidence' on the record viewed as a whole, 5 U.S.C., § 1009(e) (5). Substantial evidence is 'enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury'."

Citing National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939).

## ORAL HEARING NOT REQUIRED

Plaintiffs have cited to this court no authorities in support of their contention that the I.C.C. erred in refusing to order an oral hearing upon the Lizza application.

Plaintiffs concede that no oral hearing is required in a proceeding in which there is no material dispute of fact. In this case, the plaintiffs allege that

there was "a material issue or a discrepancy of the facts" and that it was therefore the Commission's duty to hold an oral hearing. The plaintiffs' brief does not set out any of the allegedly disputed material issues; neither does the complaint. However, in the Petition for Reconsideration filed by Baggett, it is alleged that the conclusions of Review Board Number 2 upon the application of Lizza were *"entirely based* upon the proposal of applicant to originate traffic not only at the three origin points here at issue, but in addition at shipper's various magazine locations in the State of Pennsylvania." [Emphasis plaintiffs']. Baggett also alleged in the Petition for Reconsideration that American Cyanamid's stated need for multiple pickup service in Pennsylvania was a " 'gimmick' advocated by shipper to secure approval of the instant application." at p. 6. In support of its allegation that multiple pickup service was not required by American Cyanamid, Baggett stated:

"In attacking this alleged need petitioner Baggett, for example, claimed that it had handled 17 shipments in June and July of 1969 from McAdory, Alabama, to points involved in the application and that it *was not required* on any of this traffic to either make an in-transit delivery or an in-transit pickup at points in Pennsylvania." p. 16 Baggett's Petition for Reconsideration. [Emphasis plaintiffs'].

The Court finds that the record which was before the Commission showed that American Cyanamid did, in fact, have need for multiple loading service involving traffic partially loaded at any one of the three origins here at issue (Carthage, Mo., McAdory, Ala., and Kenvil, N. J.) and partially loaded at any one of the shipper's various magazine locations in Pennsylvania.

Appendix 4 to Lizza's original verified statement lists eight shipments which Lizza handled between August 19, 1969 and October 6, 1969, each of which were partially loaded at one of the three origins which are the subject of the present case and partially loaded at one of ship-per's storage facilities in Pennsylvania. Appendix 8 to Lizza's rebuttal verified statement also listed several shipments of the same type handled by Lizza between September 25, 1969 and December 9, 1969.

The supporting shipper explained its need for multiple pickup and delivery service, stating:

"Various types of explosives will be supplied from McAdory, Alabama, Kenvil, New Jersey, and Carthage, Missouri and stored at New Castle. For example, C. E. Lizza may be asked to load approximately 10,000 pounds at Kenvil, New Jersey, proceed to New Castle, Pa., complete loading at that point with another type of explosive and then proceed to final destination in any one of many states including Ohio, West Virginia and points in the midwest and far west. In the same fashion, a truck originating in McAdory, Alabama may stop off at West Virginia for partial unloading and then proceed to New Castle to complete unloading at the storage magazine." Verified Statement of American Cyanamid, p. 9.

The evidence establishes the shipper's need for the type of multiple pickup service which Baggett alleges to be unnecessary. In its Verified Statement, American Cyanamid stated that Baggett handled shipments for American Cyanamid for a period of 42 days during the summer of 1969 only because Lizza did not, for that period of time, hold the necessary authority from the Commission to transport explosives from McAdory, Alabama. During this 42-day period it was awaiting its temporary I.C.C. permit. Verified Statement of American Cyanamid p. 11. The fact that none of the seventeen shipments handled by Baggett during June and July of 1969 required multiple pickup service is merely negative evidence and does not prove that such service is not needed by the shipper. The undisputed affirmative evidence is to the contrary.

The court holds that Baggett's mere assertion that multiple pickup service

was not needed by the shipper, supported by no positive and little negative evidence, did not produce a material dispute of fact when the need for such service had been shown by the actual operations performed by Lizza on behalf of American Cyanamid, as well as by the statement of American Cyanamid.

In its Petition for Reconsideration, Baggett raised a due process issue in regard to the Commission's refusal to grant an oral hearing but has not raised the issue before this court, and we have therefore not considered the matter. In any event, this theory of Baggett's argument before the I.C.C. was discussed and disposed of by the U. S. District Court for the Central District of California adversely to Baggett in Allied Van Lines Company v. United States, 303 F.Supp. 742 (1969) in a well reasoned opinion which may very well account for the failure of Baggett to further pursue this tack.

## THE DECISION OF THE I.C.C. IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Section 209(b) of the Interstate Commerce Act, 49 U.S.C., § 309(b), sets forth the following five factors which the Commission must consider in determining whether the issuance of a permit to a contract carrier will be consistent with the public interest and the National Transportation policy:

"* * * [1] the number of shippers to be served by the applicant, [2] the nature of the service proposed, [3] the effect which granting the permit would have upon the services of the protesting carriers, [4] the effect which denying the permit would have upon the applicant and/or its shipper, and [5] the changing character of that shipper's requirements."

For the reasons which follow, we find that the Commission followed the five criteria required by the statute; that there is substantial evidence to support the decision as to each separate criterion; and that there is substantial evidence supporting the Commission's ultimate decision upon the application.

### The number of shippers to be served

The Commission found that the applicant, Lizza, sought to serve only one shipper, American Cyanamid. 112 M.C.C. 71 at 77. As the Commission has previously stated with reference to an applicant seeking to serve only one shipper, it "would be impossible (for the applicant) to make any stronger showing under the test involved." William P. Bursch Extension-Lumber, 91 M.C.C. 953, 957 (1963). Cited in Midwest Truck Lines, Ltd. v. I.C.C., 269 F.Supp. 554, 562 (D.C.D.C.1967).

### The nature of the service proposed

Baggett and Whitten allege that the Commission acted contrary to the procedure set out by the Supreme Court in I.C.C., et al v. J. T. Transport Co. et al, 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961), in which the court stated:

"The proper procedure, we conclude, is for the applicant first to demonstrate that the undertaking it proposes is specialized and tailored to a shipper's distinct need. The protestants then may present evidence to show they have the ability as well as the willingness to meet that specialized need. If that is done, then the burden shifts to the applicant to demonstrate that it is better equipped to meet the distinct needs of the shipper than the protestants." 368 U.S. 81, 90, 82 S.Ct. 204, 210.

The Commission found that the service proposed by Lizza did fulfill the "distinct needs" of the shipper, stating:

"Applicant proposes to serve the proposed origins from facilities adjacent to Carthage, McAdory, and Kenvil. In all instances, applicant will station equipment at or near the proposed origins and will transport truckload and less-than-truckload shipments. *It also will provide a multiple-pickup service from the proposed origins and other plants or facilities of shipper located in Pennsylvania.* Applicant

has performed such service under temporary authority to shipper's complete satisfaction. Its equipment is specially equipped to transport explosives and its drivers are aware of supporting shipper's and customer's requirements. In brief, applicant has provided a "house carrier" service and the proposal is one designed to meet supporting shipper's distinct needs." 112 M.C.C. 71, at 77 [Emphasis supplied].

In its complaint and brief before this court, the plaintiffs have not alleged that they can make multiple-pickup and delivery service between the shipper's facilities in Pennsylvania and all the proposed points of origin, only saying:

" * * * record would show that Baggett can meet all of shipper's stated transportation requirements out of McAdory as from this origin there is no 'distinct need' for the co-loading service. While Baggett cannot provide the co-loading service required out of Kenvil, the record shows that C. I. Whitten can! As to the origin of Carthage, Missouri, the record shows that neither protestant vigorously challenges applicant's entry into this single location." pp. 13, 14 of Plaintiffs' Brief.

Plaintiffs thus admit that they cannot perform the required multiple-pickup service from all three proposed origins and do not challenge Lizza's ability to perform such service.

Since the applicant, Lizza, has shown that it is able to provide multiple-pickup service from the proposed origins and the facilities of shipper located in Pennsylvania, and this court is in agreement with the I.C.C.'s finding that such multiple-pickup service is an actual need of the shipper, the applicant has demonstrated that it is able to fulfill a specialized need of the shipper. For this reason, as well as the others stated in the I.C.C. opinion, the court accordingly finds that

there was substantial evidence to support the I.C.C.'s finding that the service proposed by Lizza was "one designed to meet supporting shipper's distinct needs." 368 U.S. 81, 90, 82 S.Ct. 204, 210.

The plaintiffs, Whitten and Baggett, had the opportunity during the proceeding before the Commission to show that they could meet American Cyanamid's specialized needs. Rather than showing that they could fulfill the needs of the shipper, the main thrust of plaintiffs was to challenge the validity of the shipper's stated needs, specifically, the requirement of multiple loading involving three new origins and the shipper's storage facilities in the State of Pennsylvania. In addition, plaintiffs have not shown that they have the ability to meet the specialized need and thus Lizza has carried the burden of the procedure set out in I.C.C. v. J. T. Transport Company.

In argument, Lizza. alleged as an example of the inadequacy of the plaintiffs' service the fact that the plaintiffs cannot make a pickup at New Castle, Pennsylvania and then transport the shipment in a westwardly direction from New Castle. Baggett and Whitten admitted in argument that the plaintiffs would have to backhaul to the east any westbound shipment out of New Castle through Allentown, Pennsylvania, a distance of more than 250 miles, before heading west. By way of contrast, the authority of Lizza which is part of the record does not prohibit Lizza from making a pickup at New Castle and going directly westward.

The court concludes that the evidence of the backhauling which the plaintiffs would be required to do, with its attendant added exposure of the public to the dangerous commodity carried, is additional evidence supporting the decision of the Commission.[1]

---

1. Caveat: The argument dealing with backhauling in Pennsylvania was not raised before the I.C.C., as it was in this court. Our mention of it therefore may go beyond looking to see if there was substantial evidence before the I.C.C. to support its decision.

*The effect which granting the permit would have on protesting carriers*

Appendix I to the Verified Statement of Baggett Transportation Company shows that for the first eleven months of 1969 Baggett had gross revenues of $13,010,597.48. In its Verified Statement, Baggett stated that during a thirty-five day period in June and July, 1969, it had received gross revenues of $10,500.00 on shipments handled for American Cyanamid. Baggett projected this figure to allege that it would earn over $100,000.00 in gross revenue annually on shipments carried for American Cyanamid.

The Commission, taking into account Baggett's annual gross revenue of approximately fourteen million dollars, held:

"It is inconceivable that the loss of about $12,000 in revenue, even if projected annually on the basis of $100,-000, would have any materially adverse effect upon Baggett." 112 M.C.C. at 77.

Since the $100,000.00 projected loss of prospective revenue is less than one percent of Baggett's annual gross revenue, we find that there was substantial evidence to support the finding of the Commission that Baggett would not be materially adversely affected by the granting of the permit to Lizza. We note that Baggett loses none of its present revenue by the awarding of the certificate to Lizza.

Since Whitten had never served American Cyanamid, the Commission held that it would not be affected by the grant of the permit, with which decision we agree.

*The effect which denial of the permit would have on the applicant and/or its shipper*

The traffic which is the subject of this case consists of the movement of explosives which were formerly transported by Lizza from the shipper's production facility at New Castle, Pennsylvania and which are now being purchased at the three proposed origins of Carthage, Missouri, McAdory, Alabama,

and Kenvil, New Jersey. If the applicant, Lizza, were denied the permit, it would lose the traffic which it formerly exclusively handled out of New Castle, Pennsylvania. The Reply Verified Statement of American Cyanamid stated that the New Castle explosives traffic represented approximately sixty percent of Lizza's overall business and seventy-five percent of Lizza's freight revenues.

The Commission found that "applicant would be materially adversely affected by a denial, since it stands to lose a substantial portion of the traffic, which it formerly handled from New Castle." The court finds that this decision of the Commission is supported by substantial evidence. It is idle to even speculate that the loss of three-fourths of its revenue would not have a disastrous effect on Lizza.

The Commission also held that a denial would adversely affect American Cyanamid because "the shipper has no other motor carrier service capable of providing the service proposed herein." 112 M.C.C. 71 at 78. Since the court has held that the applicant has the ability to fulfill a distinct need of the shipper which cannot be provided by the plaintiffs, a denial of Lizza's application would deprive the shipper of this specialized service and thus adversely affect the shipper.

*The changing character of the shipper's requirements*

The Commission found:

"Shipper's changing requirements involve the need for multiple-pickups from any combination of the proposed origins and shipper's Pennsylvania facilities. In this respect alone, applicant's proposed service would be substantially more flexible than that available from portestants." 112 M.C.C. at 78.

The court finds that the evidence as to the applicant's ability to make multiple-pickup service supports the Commission's finding that the applicant's proposed service is more flexible and better

able to meet the shipper's needs than the service available from the plaintiffs.

Baggett and Whitten allege that they are able to perform the multiple-pickup service to some extent but they do not allege that they are able to perform multiple-pickup and delivery service from all of the proposed points of origin in conjunction with the shipper's storage facilities in Pennsylvania.

For the reasons stated above, we find that the decision of the Commission that the issuance of the permit to Lizza would be consistent with the public interest and National Transportation policy is supported by substantial evidence.

An order is this day entered dismissing the complaint.