**INTERSTATE CONTRACT CARRIER CORPORATION, a corporation, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**and**

**Schneider Transport, Inc., et al., Intervenors.**

**No. C 74–8.**

United States District Court, D. Utah, Central Division.

Oct. 11, 1974.

Richard A. Peterson, Lincoln, Neb., James B. Lee, and Gordon L. Roberts, Salt Lake City, Utah, for plaintiff.

C. Nelson Day, U. S. Atty., D. Utah, for the United States.

Richard H. Streeter, Washington, D. C., for defendant Interstate Commerce Commission.

Daniel C. Sullivan, Gregory A. Stayart, Chicago, Ill., and Lon Rodney Kump, Salt Lake City, Utah, for intervenor Schneider Transport, Inc.

Lon Rodney Kump, Salt Lake City, Utah, for intervenors Yellow Freight System, Inc., and Transcon Lines.

Before LEWIS, Chief Circuit Judge, RITTER, Chief District Judge, and ANDERSON, District Judge.

PER CURIAM.

This is an action to review a report and order of the Interstate Commerce

Commission [1] denying plaintiff's application for a permit authorizing the transportation by motor vehicle of paper and paper products from Indianapolis, Indiana to points in Arizona, California, Colorado, New Mexico, Oregon, Utah and Washington. Since September 21, 1971, the plaintiff has, under contract with the Beveridge Paper Company, division of Scott Paper Company, transported paper products between the above points pursuant to a grant of temporary operating authority issued by the Commission under Section 210a(a) of the Interstate Commerce Act, 49 U.S.C. § 310a (a). [2]

Beveridge operates a paper mill in Indianapolis which converts scrap paper into pulp and processes this pulp into paper and paper products. The various paper products, which are not particularly identified, are shipped in cartons and rolls to various paper merchants and ultimately are utilized in the printing industry.

Except for an occasional LTL shipment, Beveridge's products were shipped by rail prior to the grant of temporary operating authority obtained by the plaintiff. Beveridge found rail service unsatisfactory because of the delivery time required and an increase in the demand for direct shipments to patrons of the paper merchants. For Beveridge to remain competitive in the subject market area it is necessary that it provide its customers with expedited deliveries on volume orders, and effective split-delivery service at competitive rates.

On November 2, 1972, under its modified procedure, [3] after considering plaintiff's application for permanent operating authority, and objections thereto by carriers holding certificates for competing operations, the Commission denied plaintiff's application. In various embraced proceedings, however, it granted plaintiff authority to provide Mattel, Inc., permanent contract carrier service. On September 27, 1973, plaintiff's request for reconsideration of its application and request to reopen the proceedings for the purpose of receiving additional evidence were both denied.

The jurisdictional requisites having been satisfied, [4] a three-judge court was convened to consider plaintiff's claim that the Commission's order should be vacated. Certain carriers whose interest would be adversely affected by a reversal of the Commission order have intervened. Pursuant to stipulation among the parties the court has issued a temporary restraining order against enforcement of the Commission decree pending judicial review.

The Commission determined that granting the permit would not be consistent with the public interest and the national transportation policy. In urging reversal of this determination plaintiff contends the Commission acted unreasonably and arbitrarily by applying a "double standard" in its evaluation of the evidence in the Beveridge application as compared with the Mattel application. Plaintiff also maintains the Commission misapplied the mandatory

1. Report and order of the Interstate Commerce Commission, decided November 2, 1972, No. MC–134599 (Sub. No. 25), Interstate Contract Carrier Corporation Extension—Indianapolis Paper. Said proceeding also embraced No. MC–134599 (Sub. No. 26), Interstate Contract Carrier Corporation Extension—Central Games; Sub. No. 29), Interstate Contract Carrier Extension—Midwest Games; Sub. No. 30), Interstate Contract Carrier Corporation Extension—Southwest Games; and (Sub. No. 31), Interstate Contract Carrier Corporation Extension—Northwest Games. In an order dated June 21, 1973, the Interstate Commerce Commission rejected the plaintiff's motions for reconsideration and to reopen the subject application for the purpose of receiving additional evidence.

2. No. MC–134599 (Sub. No. 22TA).

3. Under this procedure no oral hearing is held on the application, but the matter is submitted on the basis of sworn statements by the interested parties. The Commission's decision is based on these statements. 49 C.F.R. §§ 1100.247(e)(3), 1100.45(b), 1100.-46(b) and 1100.47–1100.54.

4. 28 U.S.C. §§ 2284 and 2321–2325. See also 28 U.S.C. §§ 1336, 1398.

standards of Section 209(b) of the Interstate Commerce Act, 49 U.S.C. § 309(b) and acted unreasonably and arbitrarily in denying the plaintiff's motion to reopen the subject proceedings.

■■■ Before considering the merit of plaintiff's claims, it is appropriate to note that judicial review of the decisions of independent agencies is limited. As this court stated in Ashworth Transfer Inc. v. United States, 315 F.Supp. 199, 204 (D.Utah 1970):

> Our review here is limited to an appraisal of the agency action solely upon the grounds invoked by the agency . . . The inquiry as to those grounds is whether the administrative decision has rational support by substantial evidence on the whole record.

If an agency determination is supported by substantial evidence and is not arbitrary or capricious involving an abuse of discretion or otherwise not in accordance with law, the reviewing court will affirm the agency's decision even though it may disagree with the agency's action or find the determination is supported by something less than the weight of the evidence. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

## DOUBLE STANDARD ARGUMENT

Plaintiff argues the Commission employed a "double standard" in considering the evidence relating to the Mattel and Beveridge applications. Plaintiff does not directly contend the evidence was insufficient to support the Commission determination in the Mattel matter or that a different standard was applied to evidence relevant to the *same* application. Arkansas-Best Freight System v. United States, 364 F.Supp. 1239 (W.D. Ark.1973). Plaintiff maintains, however, that although the evidence presented concerning the Beveridge application was similar if not more specific and complete than for the Mattel applications, the Mattel applications were granted and the Beveridge application was denied.[5] While acknowledging that reviewing courts are not usually concerned with the consistency or inconsistency of the Commission's conclusions and findings in diverse proceedings, plaintiff maintains the Commission has adopted "different standards for similar situations," and that its action was arbitrary and capricious involving an abuse of discretion.

■■■ It is true that for an administrative agency to adopt different standards for similar situations is to act arbitrarily. Dixie Highway Express, Inc. v. United States, 268 F.Supp. 239, 241 (S. D.Miss.1967). But administrative agencies are not required to adhere to the principles of stare decisis, and a difference between holdings in separate cases, or even in embraced proceedings, does not in and of itself make a decision arbitrary. *See* Ace Lines, Inc. v. United States, 197 F.Supp. 591, 599 (S.D.Iowa 1960).

■■■ We are not required to review the propriety of the Commission's order in granting the Mattel applications, and in any event do not believe that whatever differences there may be in the Commission's consideration of these applications would justify reversal. Although plaintiff's applications to provide permanent service for two separate contracting shippers were disposed of in

5. According to plaintiff's reply brief, pp. 1–4, the application of this "double standard" was apparent in: 1) the treatment of the evidence concerning the volume of the supporting shippers' traffic to specific destination; 2) the significance accorded the lack of specific showing of the traffic handled by the plaintiff under its grants of temporary authority to serve Mattel and Beveridge; 3) the consideration given the evidence concerning the effect denying plaintiff's applications would have on the supporting shippers; and 4) the application of different standards in considering the significance of the criterion in Section 209(b) of the Interstate Commerce Act, 49 U.S.C. 309(b), which concerns the effect of a denial upon the applicant and supporting shippers.

one report and order, the factual circumstances surrounding the applications, while similar in some respects, were not identical.[6]

It does not appear the Commission applied different evidentiary standards to evidence relevant to the same or identical applications. *Arkansas-Best Freight System, supra,* 364 F.Supp. at 1260–1261. We do not view the disparate conclusions reached by the Commission on the Mattel and Beveridge applications as having resulted from the application of a different standard or rule to similar situations, but as having resulted from the different evidence which was adduced. We are reminded that our consideration of this controversy is limited and that:

> [T]o consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or *whether the findings are consistent with those made by it in other cases, is beyond our province.* (Emphasis added.)

Virginian Ry. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L. Ed. 463 (1926). Thus, it appears to the court that under the facts as they appear in this case, discussing the consonance of Commission conclusions begs the primary question: whether the plaintiff has sustained its burden in these proceedings. Baker v. United States, 338 F.Supp. 331, 336 (E.D.Pa. 1972).[7]

## STANDARDS FOR AWARDING CONTRACT CARRIER PERMITS

To gain approval of its application to serve as a contract carrier, the plaintiff was required to demonstrate that its operation met the definitional requirements of Section 203(a)(15) of the Interstate Commerce Act, 49 U.S.C. § 303(a)(15). In part it provides:

> (15) The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle . . . under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles . . . to the exclusive use of each person served or (b), for the furnishing of transportation services designed to meet the distinctive need of each individual customer.

The Commission found the plaintiff satisfied the requirements of this section by serving a limited number of persons, and satisfied one of the alternative requirements by assigning vehicles for the exclusive use of the contracting shipper.

Additionally, Section 209(b) of the Act, 49 U.S.C. § 309(b), establishes five factors which the Commission must consider in determining whether the issu-

---

6. For example, Mattel involves a much greater volume of traffic than did Beveridge. Evidence of actual use was introduced in support of the shippers' contention that existing carriers were not able to provide timely and responsive split delivery in accordance with the shippers' needs. Report and order of Interstate Commerce Commission, Review Board No. 3, pp. 6–8, served December 11, 1972 (hereinafter referred to as Report No. 3. According to plaintiff, evidence of actual use, in support of the Beveridge application, was not introduced because prior to the grant of temporary authority to the plaintiff most of the shippers' products were moved by rail.

7. Plaintiff also argues the Commission applied different standards in its application of the fourth criterion of Section 209(b) (ef-

fect of denial on applicant and its supporting shipper) characterizing the Commission action as finding in favor of the Mattel application because it would give the supporting shipper the benefit of a "natural extension" of the applicant's service, but in making an unfavorable finding on the Beveridge application even though it would also involve a "natural extension" of services provided under a grant of temporary authority. Plaintiff, however, has overlooked a critical portion of the Commission's finding on this criterion in the Mattel applications that the denial would preclude the shipper from obtaining the type of service which it requires in the involved territories. Report No. 3, *supra* n. 6 at 11. The Commission found that such need was not established in the Beveridge proceeding.

ance of a permit will be consistent with the public policy and the national transportation policy:

> . . . (1) the number of shippers to be served by the applicant, (2) the nature of the service proposed, (3) the effect which granting the permit will have upon the services of the protesting carrier, (4) . . . the effect which denying the permit would have upon the applicant and/or its shipper, (5) the changing character of that shipper's requirements (numbers added).

After considering plaintiff's application on the basis of the above criteria, the Commission denied the permit stating:

> In our opinion, applicant's evidence (in terms of quality and persuasiveness), lacks the sufficiency to weigh significantly in applicant's favor especially in regard to the second and fourth criteria of Section 209(b).[8]

For the reasons which follow, we find the Commission considered the criteria required by the statute, and also find there is substantial evidence supporting the Commission's ultimate decision upon the application.

## THE NUMBER OF SHIPPERS TO BE SERVED

■ The Commission determined the total number of shippers to be served, if application were granted, would be five and found this was "not an especially favorable showing" on this question. In applying this criterion the Commission has consistently followed the standard set forth in William P. Bursch, 91 M.C. C. 953, 956 (1963):

> If the number of shippers already served approaches the maximum number permitted, the applicant, even though qualifying as a contract car-

rier, cannot be considered to have made any significant showing under this test.

Although no maximum number has been established, it is apparent that it lies somewhere between six and eight. *See* Umthun Trucking Co., 91 M.C.C. 691, 697 (1962). Where an applicant seeks to serve a total of only one shipper, the Commission has indicated that it "would be impossible to make any stronger showing under the test involved." William P. Bursch, *supra* at 957.

■ Plaintiff contends the Commission should not have considered the total number of shippers served by it under this criterion, but only the number to be served under the permit in question. Plaintiff maintains, while acknowledging the Commission has applied this standard in this manner for a considerable time, that its procedure is not correct. Since it was required to demonstrate that it serves only a "limited number of persons" under Section 203(a)(15), plaintiff argues that for the Commission to consider the total permits held under the section 209(b) criteria is duplicitous, and that it should not have considered plaintiff's total operations because Section 209(b) is only concerned with whether a particular permit would be in the public interest. The Commission did not address the question of the correctness of current Commission procedure, but argues that since the application satisfied this criterion plaintiff has nothing to complain about since even a "strong" showing under this criterion does not preclude ultimate denial of the application. *E. g.*, Midwestern Express, Inc., 112 M.C.C. 624, 630 (1970).

There is authority for the interpretation of this criterion which plaintiff advocates. Continental Contract Carrier Corp. v. United States, 311 F.Supp. 390,

---

8. Plaintiff has devoted considerable attention to the question of whether the Commission may properly consider, under the number of shippers criterion of Section 209(b), all shippers served by the applicant or only the shippers named in the application under consideration. Since the Commission found for the plaintiff on this question, it is not neces-

sary to consider plaintiff's argument that it was "entitled to make the strongest showing" possible under this criterion. We are not required to weigh the evidence in this manner. See Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926).

393 (C.D.Cal.1970). Here, however, unlike the *Continental Contract,* the Commission found in favor of the applicant on the particular issue. Consequently, plaintiff's complaint relates only to the weight to be given this criterion. As indicated previously, it is not the province of the court to examine the weight given by the Commission to the evidence. Virginian Ry. Co. v. United States, *supra.* Accordingly, there is no basis upon which the court should consider plaintiff's interpretation of this provision.

### THE NATURE OF THE SERVICE PROPOSED

Commission analysis of this element involved two factors:

> . . . (a) Whether the supporting shipper has presented evidence that it has a need for service more specialized than protestants have shown they are able and willing to provide and (b) whether applicant's proposed operation is designed to meet those needs. . . . [9]

Plaintiff claims the Commission confused the "distinct need" provision of Section 203(a)(15) with the criteria of Section 209(b), and erroneously attempted to require it to establish a distinct need for the proposed service. Plaintiff argues having satisfied the alternative requirement of Section 203 (a)(15) by dedicating equipment for the exclusive use of the shipper, the question whether there is a distinct need is then irrelevant. Meat Packers Express, Inc. v. United States, 244 F.Supp. 642 (D.Neb.1965).

■ We agree that having satisfied the requirements of Section 203(a)(15) by dedicating equipment for the exclusive use of the shipper, the Commission may not properly require the plaintiff to establish a distinct need under the above section for the proposed service. We do not find, however, that the Commission required the plaintiff to do so.

■ Regardless of which alternative is utilized in satisfying Section 203(a)(15), the adequacy of existing service is a proper factor for the Commission to consider under the criteria of Section 209(b). *See* I.C.C. v. J-T Transport Co., 368 U.S. 81, 88, 82 S.Ct. 204, 209, 7 L.Ed.2d 147 (1961). There as the Court explained:

> . . . the question of the need of the shipping public for the proposed service necessarily includes the question whether the extent, nature, character, and suitability of existing, available service makes the proposed service out of line with the requirements of the national transportation policy.

Thus, while "distinct need" is not mentioned in the section 209(b) criteria, the Commission is required to determine whether awarding a contract permit would be consistent with the public interest and the national transportation policy. In considering the "nature of the proposed services" under the above criteria, the Commission must naturally consider the question of the need for the proposed service. Midwest Truck Lines, Ltd. v. I.C.C., 269 F.Supp. 554, 561 (D. C.D.C.1967). Consequently, while the Commission properly considered the question of the need for the proposed services, we do not find evidence in the record which would indicate the plaintiff was required to demonstrate a distinct need, in the sense the term is used in Section 203(a)(15), or was otherwise improperly required to establish the inadequacy of existing service.

Although plaintiff characterized the nature of the proposed service as requiring expedited wide-area distribution of shipments to multiple customers, the necessity of multiple stops was not established by the evidence. Mr. Sheey, witness on behalf of Time-D.C. correctly assessed this deficiency in the application as observed on p. 4 of his verified statement:

> I am unable to determine the stop-off service needed by the shipper, as there are no examples of combinations of points needed, nor the frequency of

---

9. Report No. 3, p. 12, *supra* at note 6.

such shipments. As noted, our tariffs provide for up to four stops in transit for partial unloading.

Other factors also lend significant support to the Commission decision on this criterion such as the failure of the applicant to clearly identify all of the proposed commodities to be shipped, and the applicant's failure to provide information concerning the shipments made under its temporary authority prior to the time of the application for permanent authority.

## EFFECT ON SERVICES OF PROTESTING CARRIERS

 Before the plaintiff was granted temporary operating authority all of the supporting shipper's traffic, except for an occasional LTL shipment transported by Transcon or Yellow Freight, was moved by rail. The Commission concluded that to the "limited extent possible" these carriers would be adversely affected if the applications were granted. This qualification of its finding is in harmony with the conclusion reached in *J–T Transport, supra,* 368 U.S. at 93, 82 S.Ct. 204, that it is only in an unusual case that existing carriers would be adversely affected when a grant is made to a newcomer of business not presently served by an existing carrier. Said qualification of impact "to the limited extent possible" also recognized that for diversion to have an impact it must have materially and adversely affected the shipper's business. C. I. Whitten Transfer Co. v. United States, 328 F.Supp. 1120, 1125 (S.D.W. Va.1971). Since the loss of LTL shipments would not materially and adversely affect the business of existing carriers, and because no finding was made by the Commission that this was an "unusual" case, the Commission recognized that the effect on existing shippers would be very minimal.

## EFFECT OF DENIAL UPON THE APPLICANT AND/OR ITS SHIPPERS

 A grant of temporary operating authority creates "no presumption that the corresponding permanent authority will be granted," 49 U.S.C. § 310a(a). Thus, the loss to the plaintiff of the traffic carried under its grant of temporary authority is not a factor to be considered by the plaintiff under this criterion. Colorado-Arizona-California Express, Inc. v. United States, 224 F. Supp. 894 (D.Colo.1963). Since there was no other evidence in the record indicating any particular adverse effects on the applicant, the Commission properly found against it on this question. In view of the failure of the applicant and its supporting shippers to clearly explain the nature of the services, and that the need for said services was in accordance with the public interest and the national transportation policy, the Commission properly concluded the effect of denial on the shippers would not be significant.

## CHANGING CHARACTER OF SHIPPERS' NEEDS

This does not appear to have been a significant factor. The evidence presented on this question was too general to warrant the Commission giving it significance.

## DENIAL OF MOTION TO REOPEN PROCEEDINGS

 Plaintiff contends that the Commission attached substantial significance to the plaintiff's failure to submit specific information concerning the shipments it had handled under its grant of temporary authority. It maintains that it was arbitrary and capricious for the Commission to deny its motion to reopen the subject proceeding for the purpose of introducing such evidence. In view of the relatively short period of time and concomitant dearth of information available, plaintiff urges the Commission gave undue emphasis to the absence of said information.

Whether or not to permit reopening of administrative proceedings is discretionary with the agency. I.C.C. v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944). Before reopening administrative proceedings the Commission has required that the following re-

quirements be satisfied. The movant must show:

1) The evidence to be produced;

2) That this evidence is likely to produce a different result; and

3) The movant must satisfactorily explain its failure to produce such evidence at the original hearing.

Wilson Bros. Truck Line, Inc. Ext.— Frozen Foods, 94 M.C.C. 426, 428 (1964).

Plaintiff did not satisfactorily explain its failure to produce the evidence pertaining to its operations under its grant of temporary authority. Accordingly, the Commission was within its discretion in denying plaintiff's motion.

For the reasons stated above, we find that the decision of the Commission that the issuance of the subject permit to Interstate Contract Carrier would not be consistent with the public interest and the national transportation policy is supported by substantial evidence.

An order is this day entered dismissing the complaint, and dissolving the temporary restraining order.