Geneva **BROWN, Individually and as Administratrix of the Estate of Thomas J. Brown, Deceased, Plaintiff-Appellant,**

v.

**FORD MOTOR COMPANY, a corporation, Defendant-Appellee.**

No. 73–1604.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 8, 1974.

Decided March 12, 1974.

Charles W. Stubbs, Oklahoma City, Okl., for plaintiff-appellant.

Wm. G. Smith, Oklahoma City, Okl., for defendant-appellee.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

HILL, Circuit Judge.

In this removed action,[1] based on diversity, appellant Geneva Brown brought suit against appellee Ford Motor Company for the wrongful death of her husband. The complaint alleges the deceased was attempting to step up on the tailgate of a pickup truck manufactured by appellee, that the tailgate came unlatched, and that the deceased was thrown to the ground, sustaining head injuries causing his eventual death. It is claimed that the tailgate's locking device was defectively manufactured and installed, constituting a breach of implied warranty of fitness.

Based upon the pleadings, depositions, affidavits and other discovery, the district court for the Western District of Oklahoma granted appellee's motion for summary judgment. We have carefully examined the record in the light most favorable to the party opposing the motion, as we must, and find that no genuine issue exists as to any material fact. Accordingly, we affirm.

The record discloses the following relevant facts. Appellant, her husband, and a son, Tom, were on a fishing trip in Mexico in November, 1968. They were travelling in Tom's vehicle, a 1968 Ford pickup truck, with a homemade camper shell mounted on the back. While in Mexico, and enroute to their destination, the Browns parked the vehicle on the shoulder of the highway for a moment's rest. Upon attempting to reenter the highway, the vehicle became stuck in some sand. Appellant and Tom remained in the cab while the deceased climbed on the rear of the vehicle in an effort to obtain more traction. Upon freeing the vehicle Tom, who was driving, glanced in the rear view mirror and observed his father sprawled out on the highway. Approximately four months later, the deceased died as a result of a bilateral subdural hemotoma, caused by a blow or blows to the head.

Although appellant claims the accident was caused when the tailgate came unlatched as the vehicle was moving onto the highway, throwing the deceased to the ground, the record does not support this allegation. Appellant candidly admitted, in her deposition, that she did not observe the accident. She does not know what part of the vehicle the deceased was riding on, what he was holding on to, how the accident happened, or if the tailgate was open or closed immediately following the accident. The deposition of the Brown's insurance agent sheds the only light on this question. Upon inquiring as to the cause of the accident in order to initiate a claim, he was informed the deceased was riding on the open tailgate and was knocked off when the vehicle hit a small bump.

Our search of the record also fails to reveal any evidence substantiating appellant's contention that the tailgate was defective. Appellant had no knowledge, before the accident, that the tailgate would not close properly. In fact, she had never attempted to open or close it because she did not know how. She had, however, observed her husband and son opening and closing the tailgate on several occasions, and testified that it always fastened. She concluded the tailgate was defective because her son, Tom, told her so shortly after the accident, although he had never mentioned it before. The record discloses that service and repair work was performed on the vehicle by authorized Ford dealers both before the accident and while the deceased was in the hospital, but that Tom did not complain of any problems with the tailgate on either occasion.

Furthermore, a physicist with a background in metallurgy conducted experiments on the tailgate two years after the accident and concluded its latching

device was not defective. His uncontroverted testimony was that there was no bending or stretching of any of the material in the latch, and that the tailgate would fasten every time if properly closed.

Finally, the evidence does not support appellant's claim that the injuries deceased suffered in this accident caused his demise. The deceased did not complain of any injuries sustained in this accident, but only of injuries in a subsequent accident on December 24, 1968.[2] An optometrist conducted an eye examination on the deceased on November 29, 1968, after the accident in question. He observed no head injuries, and the deceased did not reveal receiving any. On December 18 the deceased saw a physician for arthritis. Again, no head injuries were observed and the deceased disclosed none. The deceased consulted the physician again on December 28, complaining of headaches. However, he informed the physician only of the December 24 injury. Moreover, this physician and the neurosurgeon who operated on the deceased both testified that this latter injury was the precipitating cause of death.

To recover, appellant necessarily must present evidence that the tailgate was defective when manufactured, that such defect rendered the tailgate unsafe for its intended use, and that the defective tailgate proximately caused the deceased's injuries. The record before us, however, discloses that no genuine issue exists on any of the material facts. We believe summary judgment is proper here.

2. The record discloses that the deceased suffered a total of three head injuries. The first is the basis of this suit. The second injury occurred on November 25, 1968. The camper on the vehicle in question has a rear door that is hinged at the top. Apparently this door fell on the deceased's head while he was unloading the camper. He sustained a third injury on December 24, 1968. A retired automobile mechanic, the deceased was examining the engine of a vehicle belonging to another son, Leroy. It is contended that Leroy struck the horn, causing the deceased to raise his head and strike it on the hood.

 The application of Rule 56(e),[3] F.R.Civ.P., also renders this case ripe for summary judgment. Appellee's motion for summary judgment was supported by depositions and affidavits. Under such circumstances the party opposing the motion may not rest upon the mere allegations of his pleading but must respond with specific facts showing the existence of a genuine issue for trial. Nevertheless, appellant failed to file any affidavits or other matter raising a factual dispute.

Because appellant neglected to comply with Rule 56(e), and because the record discloses no genuine issue exists as to any material fact, we affirm the district court's order granting summary judgment.

Affirmed.

This accident is the basis of a second wrongful death action, against Leroy.

3. Rule 56(e) provides in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.