**MGPC, INC., a Wyoming corporation, Plaintiff,**

**v.**

**Charles DUNCAN, Secretary of the Department of Energy, et al., Defendants.**

**No. C79–0279–B.**

United States District Court, D. Wyoming.

Feb. 28, 1984.

Richard T. Williams, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., Blair J. Trautwein, Hathaway, Speight & Kunz, Cheyenne, Wyo., David L. Huard, Los Angeles, Cal., for plaintiff.

Don W. Crockett, John L. Gurney, Dept. of Energy, Washington, D.C., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIMMER, Chief Judge.

This matter having come on for hearing before the Court upon the Plaintiff's Motion for Summary Judgment and upon Defendants' Motion to Strike, or in the Alternative for Further Discovery, Richard T.

Williams, Esq., Blair J. Trautwein, Esq., and David L. Huard, Esq., for the Plaintiff, and Don W. Crockett, Esq., and John L. Gurney, Esq., for the Defendants, and the Court, having heard and considered the arguments of counsel, the pleadings, and the record of administrative proceedings filed with the Court, as well as the depositions taken in this matter, and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The Plaintiff is a natural gas processing company, is incorporated under the laws of Wyoming, with offices in Los Angeles, California, and natural gas processing plants and operations in South Dakota, Montana, Texas and Wyoming. Plaintiff purchased "raw" casing-head natural gas under long-term purchase agreements which often continued in effect for the life of the well from which the gas was purchased. Plaintiff then transported such natural gas through its pipeline facilities to its processing plants, and extracted therefrom natural gas liquid products (NGLPs), primarily propane and butane, for sale to its wholesale customers. Due to the volatility of natural gas prices, and in accordance with historic practices, Plaintiff purchased such gas supplies under "net back" contracts by which the Plaintiff returned to the producer a set percentage of the sales price received for products processed from purchased raw natural gas, rather than using "fixed price" agreements.

That portion of the natural gas not consumed by processing, (referred to as residue gas) was sold by the Plaintiff in interstate commerce, and was therefore subject to regulatory control by the Federal Energy Regulatory Commission. The Plaintiff was a "refiner" as that term was used in Department of Energy (DOE) price regulations, 10 C.F.R. Section 212.31, and therefore sales of its NGLPs were subject to the regulatory control of Defendant Department of Energy (DOE) and its predecessor agencies under the Economic Stabilization Act of 1970, 12 U.S.C. Section 1904 NOTE,

P.L. 91–379, (ESA) and the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Section 751 et seq. (EPAA).

2. Defendant DOE is a federal agency and is charged with the duty and authority to enforce relevant provisions of the ESA and the EPAA and regulations promulgated thereunder. Such authority was initially vested in the Cost of Living Council (CLC) under the provisions of the ESA. It was delegated to the Federal Energy Office (FEO) by Executive Order No. 11,748, 39 F.R. 33,575 (December 6, 1973). After passage of the Federal Energy Administration Act of 1974, 15 U.S.C. Sections 761 et seq., FEO's rulemaking and enforcement functions on June 27, 1974 were transferred to the Federal Energy Administration (FEA) by Executive Order No. 11,790, 39 F.R. 185. Such authority was then transferred to Defendant DOE on February 7, 1978 after passage of the Department of Energy Organization Act, 42 U.S.C. Sections 7101 et seq. by Executive Orders Nos. 12,099, 42 F.R., 46,267 (9–15–77) and 12,-038, 43 F.R. 957. Defendant DOE's price control authority was terminated on January 28, 1981 by Executive Order No. 12,-287, 46 F.R. 9909. Defendant Duncan at the time of commencement of this action was the Secretary of DOE, and its primary administrator. Defendant Goldstein was the Director of DOE's Office of Hearings and Appeals (OHA). Both remaining individual Defendants were sued in their official capacities only, as officers and employees of Defendant DOE. Their successors have not been substituted as Defendants herein.

3. On June 6, 1974 Plaintiff filed a Petition for Interpretation and Exception with FEA's Office of General Counsel (OGC) and its Office of Exceptions and Appeals (OEA), requesting, in part, an exemption from FEA's NGLP pricing regulations set forth in 10 C.F.R. Section 212.82, or in the alternative requesting exception relief under 10 C.F.R. Section 205.41 et seq., so as to enable it to charge up to 27.7 cents per gallon weighted average for NGLPs produced by it in its processing plants rather

than the applicable ceiling price of approximately 8 cents per gallon permitted under such regulations. FEE–0899. Plaintiff alleged, in part, that the pricing regulations were ill-suited for natural gas processing plants, but rather were designed to govern NGLPs produced from crude oil by crude oil refiners, and that the effect of the price regulations was to lock natural gas processors in at their May 15, 1973 base prices in computing maximum lawful selling prices (MLSPs) for NGLPs since the historical practice of using net-back supply contracts effectively precluded them from incurring and passing through increased product costs. Plaintiff alleged that integrated crude oil refiners, such as its primary competitor for new supplies of natural gas, Phillips Petroleum Company, could average prices for NGLPs, whether produced from crude oil or natural gas, and thus could pass through increased product costs for crude oil in computing MLSPs for their NGLPs. Plaintiff claimed that such crude oil refiners, which also used net-back contracts in purchasing new natural gas supplies, were therefore able to pay producers up to three times as much as natural gas processors could for new gas supplies. Plaintiff further alleged that it had rapidly declining natural gas reserves, due in part to the rapid depletion rates common in the Powder River Basin, and that its inability to obtain new supplies of natural gas forced it to operate its facilities at substantially less than 100% capacity, resulting in substantial operating losses the magnitude of which were growing as its then current supplies, and thus its volumes of production, decreased. It claimed that it would have to charge 27.7 cents per gallon weighted average for NGLPs produced at its facilities at then current volumes in order to cover its operating costs, obtain new supplies, and provide an adequate return on investment (approximately 6%) on its capital facilities and therefore sought exception relief allowing it to charge up to that amount.

4. On September 10, 1974 FEA proposed new Subpart K to Part 212 of its pricing regulations, 10 C.F.R. Section 212.-64 et seq. (Subpart K) 39 F.R. 32717 (9–10–74). Subpart K was to specifically address unique considerations concerning MLSPs for NGLPs produced from natural gas streams rather than from crude oil, which FEA conceded were not adequately dealt with under the original pricing regulations governing NGLPs contained in Subpart E to Part 212, 10 C.F.R. Section 212.83 et seq. (Subpart E). In the preamble to such proposed rulemaking FEA acknowledged the plight of all natural gas processors, including the Plaintiff, and the severe financial burden imposed upon them by the provisions of Subpart E. The preamble admitted that the previous provisions were ill-suited for the operations of natural gas processors, and had the effect of limiting them to May 15, 1973 base prices in computing MLSPs for their NGLPs. The preamble noted the fact that the regulations created pricing disparities as between natural gas processing plants and crude oil refiners, giving the latter a competitive advantage in obtaining new natural gas supplies under net back supply contracts, which were commonly used throughout the industry, and therefore threatened to impose substantial injury upon natural gas processors if not remedied.

5. On September 12, 1983 FEA denied Plaintiff's request for exception relief in FEA–0899 on the ground that the Plaintiff had failed to substantiate its claim that it was incurring substantial hardship or gross inequity as a result of the provisions of Subpart E. Such Decision and Order proposed that the Plaintiff could cure its financial hardships by altering its mode of acquiring new natural gas supplies by using fixed price supply contracts rather than traditional net-back arrangements.

6. Plaintiff appealed the Decision and Order of FEE–0899 in FEA–248. Plaintiff sought a stay of the applicability of Subpart E to its operations pending a decision in FEA–248, which was denied. FEA–248. On November 22, 1974 FEA's Office of Hearings and Appeals (OHA) issued a Decision and Order which reversed the denial of relief in FEE–0899, and which granted

Plaintiff's request in part, allowing Plaintiff to price its NGLPs in such a way that its weighted average selling price for all NGLPs sold by it would be its MLSP under applicable pricing regulations, plus no more than 1.5 cent per gallon. *McCulloch Gas Processing Corp.*, CCH Federal Energy Guidelines Par. 20,186 (11–22–1974).

7. On December 19, 1974 FEA adopted new Subpart K, effective January 1, 1974. 39 F.R. 44,407 (12–24–74). Between November 22, 1974 and January 10, 1975 Plaintiff's Washington, D.C. counsel, Joe W. Fleming, contacted FEA's highest ranking officials in its national office in Washington, D.C., requesting them to instruct the Plaintiff as to how it could apply the 1.5 cent per gallon relief, as this matter was not specifically set forth in the Decision and Order in FEA–248. Mr. Fleming initially believed that the relief was only prospective in nature, and felt that it was grossly inadequate for this reason. However, he was then instructed by FEA's personnel that the relief was retroactive in nature, and that the Plaintiff could use the relief to justify all of its selling prices for 1974, and could rebill its customers if it so desired, or could bank the relief and recapture it in computing future MLSPs for its NGLPs. Mr. Fleming was further instructed that the relief would continue into 1975 and could be used in conjunction with the relief granted by Subpart K, and that such relief would continue in effect until terminated in compliance with the terms of the November 22, 1974 Decision and Order.

8. On January 10, 1975 FEA's Administrator Frank G. Zarb, General Counsel Robert Montgomery, and Assistant Administrator Duke Ligon met with several of the Plaintiff's officers and employees, including its president C.V. Woods, its house counsel Franklin P. Dodge, its retained Washington D.C. counsel Joe W. Fleming, and its current president H.C. Ouzts, concerning the application and effect of the 1.5 cent per gallon relief in conjunction with the additional relief provided under new Subpart K. During the course of such meeting the FEA officials informed the Plaintiff that it could apply the 1.5 cent per gallon relief retroactively for all of 1974, and prospectively in conjunction with the relief provided by new Subpart K until terminated in compliance with the terms of the November 22, 1974 Decision and Order. In addition Peter Luedtke, FEA's Assistant General Counsel, informed Plaintiff's accountants, Arthur Young and Company, on three separate occasions in March of 1975 that this was the proper construction of the 1.5 cent per gallon relief. Between January 10, 1975 and February 24, 1975 various representatives of FEA in its Region VIII and Region IX offices similarly confirmed that this was the proper construction of the 1.5 cent per gallon relief. Arthur Young and Company, in part in reliance upon such representations, allowed the Plaintiff to terminate a financial reserve previously required by it due to the Plaintiff's pricing problems under Subpart E and due to the confusion surrounding the computations of Plaintiff's MLSPs under the provisions of Subpart E.

9. On January 13, 1975 Plaintiff filed a Petition for Exception Relief from the provisions of new Subpart K. FEE–1393. In conjunction with such petition Plaintiff filed various price computations reflecting its understanding that the 1.5 cent per gallon relief could be applied in conjunction with the provisions of Subpart K. On March 20, 1975 Franklin Dodge wrote Melvin Goldstein in response to an Order issued March 6, 1975 which sought to terminate the 1.5 cent per gallon relief, and in such letter expressly stated Plaintiff's understanding that the 1.5 cent per gallon relief could be applied retroactively for the year 1974, as well as prospectively. Neither of these representations were disputed nor objected to by FEA.

10. On January 13, 1975 Richard Tedrow, an auditor for FEA wrote Plaintiff's president R.L. Cook, stating that the 1.5 cent per gallon relief was automatically terminated upon the issuance of new Subpart K, and inviting the Plaintiff to seek exception relief from the provision of Subpart K if it continued to suffer substantial hardship or gross inequity. That letter contradicted the language of the November

22, 1974 Decision and Order which stated the relief would continue in effect after the issuance of the new regulations and until terminated after notice and an opportunity to comment. The letter did not inform the Plaintiff of FEA's intent to terminate such relief and did not invite the Plaintiff to comment upon such intention.

11. On January 15, 1975 Mr. Zarb sent a letter to Mr. M.M. Witte, vice chairman of the board of MIGC, a sister corporation of the Plaintiff which was purchasing a portion of the Plaintiff's residue gas production, in response to Mr. Witte's letter of December 6, 1974 to Mr. Zarb's predecessor in office, John C. Sawhill. The December 6, 1974 letter complained to FEA stating that the 1.5 cent per gallon was inadequate to remedy the substantial financial hardship suffered by the Plaintiff under Subpart E. Mr. Zarb noted that new Subpart K remedied many of the alleged hardships suffered by the Plaintiff, and concluded that the Plaintiff's hardship under Subpart E and the inadequacy of the 1.5 cent per gallon relief were no longer relevant questions. He said that the Plaintiff should file for exception relief from the provisions of Subpart K, should the additional relief fail to adequately remedy such hardship. Neither this letter, nor a separate letter from FEA to Plaintiff dated January 2, 1975 denying further exception relief in FEA–248, addressed the question of whether the 1.5 cent per gallon relief could be applied in conjunction with Subpart K, or whether it was terminated upon the adoption of new Subpart K. Furthermore, neither of the letters informed Plaintiff of FEA's intent to terminate the 1.5 cent per gallon relief nor invited the Plaintiff to comment upon such a proposal.

12. On January 16, 1975 FEA's Region VIII Office, following proceedings in which FEA national office personnel participated actively, issued a Remedial Order requiring Plaintiff continue to sell a specified part of its propane production to Hidrogas Inc., its base period purchaser, under FEA allocation regulations. That Remedial Order computed Plaintiff's MLSPs for propane, and in doing so included the 1.5 cent per gallon relief in addition to the additional relief provided under Subpart K. While the Remedial Order limits the effect of such computation, referring to it as an assumed MLSP, such limitations concerned the accuracy of the data provided by the Plaintiff concerning its May 15, 1973 base period prices and its nonproduct cost increases since the effective date of relevant pricing regulations rather than the elements included in the computations, including the use of the 1.5 cent per gallon relief. On January 27, 1975 FEA's Region IX office issued an audit report and Proposed Remedial Order (PRO) which also permitted the Plaintiff to use the 1.5 cent per gallon relief in conjunction with the additional relief provided by Subpart K. However, the PRO, contrary to the representations made by FEA's officials from its national office, alleged that the 1.5 cent per gallon relief was prospective in nature and could not be used to justify selling prices prior to November 22, 1974. In response to these inconsistent representations, as well as to other considerations, Plaintiff on January 13, 1975 filed Civil Action No. CV 75–99F, and on January 20, 1975 filed Civil Action No. CV 75–202 WPG, both in the United States District Court for the Central District of California, seeking declaratory and injunctive relief against FEA and various of its officers and employees. Such actions, in part, alleged that the 1.5 cents per gallon relief was retroactive in effect, and requested the Court to so construe such relief, and to enjoin FEA and its officers and employees from taking an inconsistent position in any enforcement proceedings. Plaintiff also alleged that the 1.5 cent per gallon relief was unreasonably low in amount and requested the Court to order FEA to grant Plaintiff more substantial relief.

13. Between February 5, 1975 and February 24, 1975 FEA's Region IX office conducted proceedings concerning Plaintiff's objections to the PRO issued January 27, 1975. Throughout the course of such proceedings FEA's Region IX personnel, including Phillip Naideth, Herbert Schreib-

er, and national office personnel, including Stewart Stone of FEA's Office of General Counsel (OGC), and Ezra Levine, consistently represented to the Plaintiff that the 1.5 cent per gallon relief could be applied in conjunction with the additional relief provided by Subpart K. On February 24, 1975 Region IX reversed and dismissed the PRO issued January 27, 1975 on grounds not relevant to the application of 1.5 cent per gallon relief. However, language in such order reaffirmed FEA's position that Plaintiff could apply the 1.5 cent per gallon relief in conjunction to the relief provided by Subpart K. In addition, correspondence between Zarb, Gorman Smith, Acting Assistant Director of Regulatory Programs of FEA's national office, and Kenneth Merica, and Dudley Faver, both of FEA's Region VIII office, between February and April of 1975 indicated that at that time FEA believed that the Plaintiff could "piggyback" such relief.

14. On March 3, 1975 H.W. Lemens, Inc., a purchaser of NGLPs from Plaintiff, complained to FEA concerning the fact that Plaintiff was continuing to use the 1.5 cent per gallon relief in conjunction with its pricing under Subpart K, and also complained about the fact that market prices for NGLPs had skyrocketed and were thereby imposing substantial burdens upon wholesalers and consumers of such products.

15. On March 6, 1975 FEA reopened FEA–248, which was on review before the United States District Court for the Central District of California, and issued a Supplemental Order concerning the 1.5 cent per gallon relief, stating that due to the additional relief provided by new Subpart K the 1.5 cent per gallon relief was no longer needed by the Plaintiff. That order stated that the relief granted in FEA–248 was only applicable to Plaintiff's pricing under Subpart E, and that the 1.5 cent per gallon relief could not be applied in conjunction with pricing under Subpart K. The order purported to terminate the exception relief effective January 1, 1974. On March 20, 1975 Plaintiff timely filed a substantial amount of materials with FEA alleging that the relief provided under Subpart K was inadequate to remedy the substantial losses in revenue and in new natural gas reserves incurred by the Plaintiff prior to its adoption, since it was only prospective in effect, and that therefore the 1.5 cent per gallon relief was still needed to enable the Plaintiff to recapture the market position it held prior to the imposition of pricing regulations upon its operations, as opposed to Phillips Petroleum. FEA and its successor agencies never responded to these materials, and never issued a formal written order subsequent to March 6, 1975 which finalized the termination of the 1.5 cent per gallon relief. At no point prior to March 6, 1974 did FEA notify Plaintiff that it intended to terminate the exception relief or invite Plaintiff to comment on such intent. DOE now claims that ten days after service of the Supplemental Order upon Plaintiff, FEA determined that the materials filed were not adequate to "show cause" and terminated the exception relief effective January 1, 1975. The supplemented record indicates that between February and March of 1974 there was a substantial amount of debate within FEA as to whether or not the exception relief granted under Subpart K was automatically terminated upon issuance of new Subpart K.

16. On May 23, 1975 FEA issued Ruling No. 1975–6, which gave the "shrinkage" provisions of Subpart K retroactive effect for the time period from August 19, 1973 to December 31, 1974. 40 F.R. 23,272 (May 29, 1975). On August 29, 1975 FEA issued the "Class Exception", 40 F.R. 40,824 (September 4, 1975), which allowed natural gas processors to apply minimum base prices and nonproduct cost pass-through provisions of Subpart K retroactively for such period as well. Neither the Ruling nor the "Class exception" permitted rebilling of purchasers for such period, but rather allowed natural gas processors to bank the price increases resulting therefrom as unrecovered operating costs, and to recover up to 10% of such banked costs per month in determining MLSPs prospectively to sales of NGLPs after August 29, 1975.

Nowhere does the Ruling in the Class Exception state that its relief is exclusive of any relief given by FEA previously. Neither does Subpart K state that relief provided thereby is exclusive of all other relief provided previously by FEA. FEA concedes that Ruling 1975–6 may be applied in conjunction with pricing under Subpart E, but FEA alleges that the Class Exception is exclusive of any relief provided by FEA during the time period prior to January 1, 1975, since such relief states that it is made applicable only "to the extent that" Subpart K applies to a processors operations. However, the language in such ruling merely makes clear the fact that pricing relief provided thereby is available to integrated petroleum refining companies only to the extent that they process NGLPs from natural gas streams, and does not address the question whether or not such relief is exclusive from any other relief provided previously by FEA.

17. Between August 29, 1975 and September 19, 1975 Plaintiff's representatives inquired of FEA concerning computation of MLSPs under the provisions of the Class Exception. During such inquiries FEA representatives informed Plaintiff that it could apply the 1.5 cent per gallon relief in conjunction with the additional relief provided by the Class Exception. Plaintiff, in part reliance upon such representations, dismissed the two civil actions filed against FEA in the United States District Court for the Central District of California. In addition Plaintiff, in reliance upon such representations, included the 1.5 cent per gallon relief in computing its MLSPs for 1974 under the Class Exception. In reliance upon these representations made by FEA, and the terms of the November 22, 1974 Decision and Order, and upon FEA's failure to comply with the terms of such Order in seeking to terminate the exception relief, as well as FEA's failure to respond to the evidence submitted by the Plaintiff on March 20, 1975, Plaintiff continued to apply the 1.5 cent per gallon relief in conjunction with the provisions of Subpart K until DOE's price control authority was terminated on January 30, 1981.

18. On January 1, 1976 Kenneth Merica, Compliance Director of DOE's Region VIII, commenced an audit of the Plaintiff's books concerning prices charged for NGLPs from August 19, 1973 to February 28, 1975. Merica, along with Sidney Ward of DOE's Region VIII Office, completed the audit on December 12, 1977. In the audit DOE's Region VIII representatives construed the 1.5 cent per gallon relief as being applicable only to pricing under Subpart E, and therefore as not being applicable in conjunction with Plaintiff's pricing under Subpart K, nor under the Class Exception. The audit concludes that the relief is not applicable to any of the Plaintiff's pricing, but rather was in effect superseded by the provisions of Subpart K and the Class Exception. The audit also states that, in any event, the relief granted November 22, 1974 was prospective and could not be used to justify selling prices prior to November 22, 1974. The audit also states that the relief provided by Subpart K and the Class Exception was elective in nature, and could be used by the Plaintiff only if it agreed to surrender the benefits of the 1.5 cent per gallon relief. The audit concludes that Plaintiff, to the extent it applied the 1.5 cent per gallon relief in conjunction with the relief provided by Subpart K and the Class Exception overcharged its customers for NGLPs and violated applicable pricing regulations. On January 27, 1978 Region VIII on this and several other bases issued a Notice of Probable Violation (NOPV) alleging Plaintiff accumulated over $3,000,000 in overcharges during the time period from August 19, 1973 to February 28, 1975. On March 31, 1978 Plaintiff replied to the NOPV. On January 26, 1979 DOE's Region VIII office issued a PRO generally incorporating the allegations and analysis contained in the NOPV and audit, and ordering the Plaintiff to make restitution for overcharges in the amount of $3,773,938.30 to customers, with interest from the date of the alleged overcharge. On February 8, 1979 and on February 28, 1979 Plaintiff filed objections to the PRO

which matter is still pending before DOE in OHA Case No. DRO–177 (831V0016).

19. Plaintiff alleges that the audit, NOPV, and PRO are unfounded and unreasonable to the extent that they (a) conclude that the 1.5 cent per gallon relief granted by the Decision and Order of November 22, 1974 was not retroactive for the calendar year of 1974 nor prospective into 1975 until terminated in compliance with the terms of such Decision and Order, and (b) conclude that the 1.5 cent per gallon relief cannot be applied in conjunction with the additional relief provided by Subpart K and the Class exception. In addition Plaintiff claims that the 1.5 cent per gallon relief was unreasonably low in light of the facts known to and considered by FEA at the time that FEA–248 was decided in that the amount failed to address the Plaintiff's fundamental contention that it could not compete for new natural gas supplies due to net back supply contract arrangements unless it was able to charge at least 20 cents per gallon weighted average for its NGLPs. Finally, Plaintiff contends that DOE, and its predecessor agencies, failed to effectively terminate the 1.5 cent per gallon exception relief in compliance with the terms of the November 22, 1974 Decision and Order because they never gave Plaintiff prior notice of intent to terminate the relief nor an opportunity to respond prior to the issuance of the March 6, 1975 Supplemental Order, and they never replied to the materials filed by the Plaintiff on March 20, 1975 in response to such Supplemental Order.

20. Plaintiff requested the Court to:

(a) construe the November 22, 1974 Decision and Order and to declare that it permitted Plaintiff to apply the 1.5 cent per gallon relief retroactively to justify MLSPs for all of calendar year 1974, and prospectively into 1975 until effectively terminated in compliance with the provisions of the November 22, 1974 Decision and Order;

(b) construe such Decision and Order and declare that the 1.5 cent per gallon relief could be applied in conjunction with the additional relief provided by Subpart K and the Class Exception;

(c) declare that the 1.5 cent per gallon relief was never effectively terminated by DOE or its predecessor agencies in compliance with the terms of the November 22, 1974 Decision and Order, and therefore that it continued in effect until January 30, 1981 when DOE's price control powers were terminated;

(d) issue a permanent injunction against DOE, and its officers and employees, constraining them from issuing any decision or order, or from otherwise proceeding in any manner not consistent with the declarations of the Court set forth in Paragraph 20(a) through (c) above; and,

(e) declare that the 1.5 cent per gallon amount of relief was unreasonably low under the circumstances, arbitrary, capricious, and not supported by substantial evidence in the record read as a whole, and to therefore remand this matter to DOE for further proceedings to determine what greater amount should have been awarded, pursuant to *McCulloch Gas Processing Corporation v. D.O.E.*, 498 F.Supp. 194 (D.Wyo.1979).

21. Plaintiff filed a Motion for Summary Judgment, with supporting affidavits, attachments, and memorandum of law on September 7, 1982. Defendants in response thereto filed a Motion to Strike, or in the Alternative for Additional Discovery under Federal Rule of Civil Procedure 56(f). Upon reviewing the pleadings, the Administrative Records filed with the Court herein, the depositions filed with the Court herein, and the materials filed with the Court along with the various motions, the Court has determined that there is no genuinely disputed material fact, and that disposition of this matter upon the Plaintiff's Motion for Summary Judgment is appropriate. *Standard Oil Co. v. D.O.E.*, 596 F.2d 1029, 1065 (TECA 1978); *Roberts v. Morton*, 549 F.2d 158, 160 (10th Cir. 1976), cert. den. 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this pro-

ceeding under 42 U.S.C. Section 7192, and 12 U.S.C. Section 1904 NOTE Sections 210 and 211, incorporated by reference in 15 U.S.C. Section 754(a)(1). Venue is properly in the United States District Court for the District of Wyoming.

2. Plaintiff herein requests the Court to enjoin and set aside agency action of Defendant DOE. Therefore, this Court must determine, based upon the administrative record before the agency, whether the Defendants' findings are supported by substantial evidence, based upon the record as a whole; and whether the agency action was in excess of agency authority, was arbitrary and capricious, or was otherwise unlawful. 12 U.S.C. Section 1904 NOTE Section 211(d), incorporating by reference 5 U.S.C. Section 706(2); *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Pasco, Inc. v. F.E.A.,* 525 F.2d 1391, 1404 (TECA 1975); *Nickol v. United States,* 501 F.2d 1389 (10th Cir. 1974). However, such review is upon the whole record, and therefore the Court may supplement the record submitted by the agency with matters which were omitted therefrom, but which were considered, either directly or indirectly, by the agency in rendering its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *United States v. Carlo Bianchi & Co., Inc.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963); *Marathon Oil Co. v. D.O.E.,* 642 F.2d 436, 439 (TECA 1981); *Hiatt Grain and Feed, Inc. v. Bergland,* 446 F.Supp. 457 (D.Kan.1978), aff'd 602 F.2d 929 (10th Cir.1979), cert. den. 444 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980); *Exxon Corp. v. D.O.E.,* 91 F.R.D. 26, 32–33 (N.D.Tex.1981). In conducting its review the Court must make a careful, searching review of the record, and then determine whether a reasonable mind could conscientiously conclude that the agency decision was reasonable in light of all of the evidence present in the record. *Greater Boston Tel. Corp. v. F.C.C.,* 444 F.2d 841, 850 (1st Cir.1970), cert. den. 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971); *Consolidated Edison Co. v. N.L. R.B.,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Diamond Ring Ranch, Inc. v. Morton,* 531 F.2d 1397, 1404 (10th Cir. 1976); *Atlantic Richfield Co. v. F.E.A.,* 429 F.Supp. 1052 (N.D.Cal.1976), aff'd 556 F.2d 542 (TECA 1977); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

3. On September 7, 1982 Plaintiff filed a Motion for Summary Judgment with supporting affidavits of Richard T. Williams, Esq., Plaintiff's counsel in the proceedings before this Court; C.V. Woods, who at all times relevant to these proceedings was the president of Plaintiff's parent corporation, McCulloch Oil Corporation; Franklin P. Dodge, Esq., who was Plaintiff's house counsel, and senior attorney for McCulloch Oil Corporation at all times relevant to these proceedings; Joe W. Fleming, II, Esq., who was Plaintiff's retained counsel in Washington, D.C. for the purposes of relevant administrative proceedings before FEA's national office; and H.C. Ouzts, who at all relevant times was, and still is, Plaintiff's president. In compliance with Rule 56(e) of the *Federal Rules of Civil Procedure* sworn copies of all papers or parts thereof referred to in such affidavits were attached thereto and served therewith. Where the movant establishes that there is no genuinely disputed issue as to any material fact, a Motion for Summary Judgment is an appropriate vehicle for the disposition of a case calling for the review of administrative action upon the record. *Standard Oil Co. v. D.O.E.,* 596 F.2d 1029, 1065 (TECA 1978); *Roberts v. Morton,* 549 F.2d 158, 160 (10th Cir.1976), cert. den. 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977); *Nickol v. United States,* 501 F.2d 1389, 1390–1391 (10th Cir.1974).

4. On October 5, 1982 this Court upon Defendants' motion issued an Order extending the time within which Defendants could respond to Plaintiff's Motion for Summary Judgment to October 31, 1982. On November 5, 1982 Defendants filed a Motion to Strike all Proffered Evidence, or in the Alternative Motion for Leave to Take

Discovery in accordance with Rule 56(f), on the ground that certain materials set forth in Plaintiff's materials filed in support of its Motion for Summary Judgment were not relevant to determination of the issues before the Court in that such materials were not considered, directly or indirectly, by the Defendants in rendering the decisions brought before this Court for review. A party may, under Rule 12(f) of the *Federal Rules of Civil Procedure* request the Court to strike matters contained in an affidavit filed in support of a motion for summary judgment upon the grounds that such materials would be inadmissible at trial, in that they are allegedly irrelevant. *Mapco Inc. v. Carter,* 573 F.2d 1268 (TECA 1978), cert. den. 437 U.S. 904, 98 S.Ct. 3090, 57 L.Ed.2d 1134 (1978); *Noblett v. General Electric Credit Corp.,* 400 F.2d 442, 445 (10th Cir.1968), cert. den. 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271 (1968); *Wright, Miller and Kane: Civil Practice and Procedure,* Civil 2d, Section 2738 pp. 470–508. However, the Court will simply disregard those matters stricken from the affidavit, while considering the remainder of such affidavits and shall not require the movant to refile the affidavit omitting therefrom the objectionable materials. *Lee v. National Life Assn. Co.,* 632 F.2d 524 (5th Cir. 1980); *United States v. Alessi,* 599 F.2d 513, 515 (2d Cir.1979); *Skelly Oil Co. v. F.E.A.,* 448 F.Supp. 16 (D.Okl.1977); aff'd 581 F.2d 838 (TECA 1978), cert. den. sub nom *Getty Oil Co. v. D.O.E.,* 439 U.S. 1070, 99 S.Ct. 840, 59 L.Ed.2d 36 (1979); *Dickheiser v. Pennsylvania R. Co.,* 5 F.R.D. 5 (E.D.Pa.1945), aff'd 155 F.2d 266 (3rd Cir. 1946), cert. den. 329 U.S. 808, 67 S.Ct. 620, 91 L.Ed. 689 (1946); *Wright, Miller and Kane, supra,* Section 2738 pp. 509–510. Therefore a Motion to Strike, in order to be effective, must set forth the objectionable portions of the affidavit and the grounds for the objection, as was done in this case. *Perma Research and Dev. Co. v. Singer Co.,* 410 F.2d 572, 579 (2d Cir.1969); *Wright, Miller and Kane, supra,* Section 2739 p. 511. But, in an administrative review involving complex and technical issues, the Court may admit voluminous information not contained in the administrative record, and may review the same in order to aid it in understanding the issues presented, to give the Court a background and basis upon which the Court may better evaluate the evidence contained in the record, and to help the Court in determining the adequacy of the record submitted by the agency. *Hiatt Grain and Feed, Inc. v. Bergland, supra.* The Court may then disregard those materials submitted which are not relevant to determination of the merits of the issue presented to the Court, and not rely upon them in rendering its final decision upon the merits. *Id.* Plaintiff concedes in its reply to the Defendants' Motion to Strike that much of the material submitted along with its Motion for Summary Judgment was intended to aid the Court in understanding the issues presented herein, and should not be relied upon by the Court in rendering its decision upon the merits in this proceeding. Within the context of a review of an administrative record, the Defendants have failed to persuade the Court that there is a reasonable basis for requiring that such material should be stricken from the Plaintiff's supporting affidavits.

 5. Defendants' Rule 56(f) Motion primarily seeks to enable the Defendants to respond to the background materials submitted by the Plaintiff in support of its Motion for Summary Judgment. Since such matters are not at issue here, and since such materials will not be considered by the Court in rendering its judgment upon the merits in this proceeding, such discovery would serve no useful purpose, and should be denied. Defendants also seek further discovery concerning issues which were initially raised by the Plaintiff in its original and in its amended, complaint. Such discovery concerns representations which Plaintiff has alleged were made by FEA officials concerning the proper application and effect of the exception relief granted to the Plaintiff in FEA–248. Plaintiff has submitted affidavits of several undeniably credible persons setting forth the content of such representations. In

response Defendants deny knowledge of the content of such meetings. While Defendants' records show that such meetings did in fact transpire, they have failed to produce any minutes or counter-affidavits or other material indicating that the Plaintiff's version of what transpired was inaccurate. The officials who participated in such meetings now deny present recollection of them which does not mean that Plaintiff's version is untrue but only means they do not recall the facts. The Defendants' claim of ignorance is not adequate to show that there is a genuinely disputed issue as to a material fact such as would preclude the Court from granting Plaintiff's Motion for Summary Judgment. *Wright, Miller and Kane, supra,* Section 2741 p. 562. Where, as here, the Defendants have had an adequate opportunity to pursue discovery on these issues, a Rule 56(f) motion should be denied. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Wright, Miller and Kane, supra,* Section 2471 pp. 541–562. Since Defendants allege they have no documentary evidence concerning what transpired at these meetings, and since the relevant officials and employees all deny present recollection of what transpired in such meetings, it seems clear that further discovery on this question would not lead to further admissible evidence that would aid the Court in rendering its decision herein. Therefore Defendants' Rule 56(f) motion should be denied. *Id.*

6. Defendants did not comply with the requirements of Rule 56(e) of the *Federal Rules of Civil Procedure* in that they did not respond to the allegations contained in affidavits and supporting materials filed by the Plaintiff in support of its Motion for Summary Judgment, but rather relied upon the general allegations contained in their pleadings filed herein. *Otteson v. United States,* 622 F.2d 516, 520 (10th Cir.1980); *Gates v. Ford Motor Co.,* 494 F.2d 458 (10th Cir.1974); *Brown v. Ford Motor Co.,* 494 F.2d 418 (10th Cir.1974). The Defendants also did not comply with Local Rule 6(b) and the Order of this Court in that

they failed to file a brief in opposition to the Plaintiff's Motion for Summary Judgment within the extended time period. Plaintiff has adequately established that there are no genuinely disputed issues as to any material facts, and the Defendants have denied but have not shown facts to the contrary to rebut this showing. Thus, the Court must consider the relevant matters set forth in the Plaintiff's supporting affidavits to be established as alleged by the Plaintiff. *Casper v. Neubert,* 489 F.2d 543 (10th Cir.1973).

7. The Court is authorized to issue declaratory relief and injunctive relief should it find that the Defendants' conduct violated the standards set forth in 12 U.S.C. Section 1904 NOTE Section 211(d) and 5 U.S.C. Section 706(2). 12 U.S.C. Section 1904 NOTE Section 210(a), 28 U.S.C. Section 2201 (1982). It is undisputed that the Plaintiff is currently subject to a PRO issued by Defendant DOE ordering it to make restitution to its wholesale purchasers for alleged overcharges. Thus, should the Plaintiff prevail upon the merits herein, it has adequately established irreparable injury so as to justify injunctive relief. *Otero Savings and Loan Assn. v. F.R.B.,* 665 F.2d 275, 278 (10th Cir.1981); *Studebaker Corp. v. Gittlen,* 360 F.2d 692, 698 (2d Cir.1966); *Ohio Oil Co. v. Conway,* 279 U.S. 813, 815, 49 S.Ct. 256, 257, 73 L.Ed. 972 (1929) (per curiam); *Nelson v. Likins,* 389 F.Supp. 1234, 1237 (D.Minn.1974).

8. The Court, when determining whether pricing regulations issued by a regulatory agency are unreasonably low, does not review the formula used by the agency, but rather must determine whether the end result, i.e., the price established, was or was not compensatory. *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), reh. den. sub nom; *Bass v. F.P.C.,* 392 U.S. 917, 88 S.Ct. 2050, 20 L.Ed.2d 1379 (1968). Were the Court to review the Defendants' computation of the 1.5 cent per gallon amount in a vacuum it could readily conclude that the amount was arbitrary and capricious

because it failed to address the Plaintiff's supply problems, would have compelled the Plaintiff to incur substantial losses in the future, and would have eventually forced the Plaintiff out of business. However, several surrounding circumstances persuade the Court to conclude that the determination made by the Defendants was reasonable: Such relief was deemed to be "interim" in nature, pending issuance of new Subpart K. The 1.5 cent per gallon amount was computed, based upon data submitted by the Plaintiff, to generate $766,800 in additional revenues so as to (in light of Plaintiff's average 28% net-back commitment to suppliers, and at the current volumes of production, estimated to be 71 million gallons for 1974) eliminate Plaintiff's operating losses (projected to be $764,000) for 1974. Such relief was not intended to address Plaintiff's more fundamental supply problems. The Decision and Order in FEA–248 recognized the fact that new Subpart K had previously been proposed, was currently pending before the agency, and would probably be adopted in its final form within a very short time period. The Decision and Order also recognizes the fact that such new regulations were designed to remedy the supply problems facing natural gas processing plant operators such as the Plaintiff, and then concluded that it would be premature to address Plaintiff's more fundamental contentions, and to thereby discriminate in the Plaintiff's favor as opposed to other natural gas processors which were similarly situated. FEA believed at the time it issued the Decision and Order in FEA–248 that the 1.5 cent per gallon relief would eliminate Plaintiff's 1974 operating losses (as well as its ongoing operating losses in 1975 should Subpart K not be adopted previously) and that the new pricing rules, when issued, would put an end to Plaintiff's more fundamental supply and volume problems. In light of the information before FEA at the time that the Decision and Order was issued, this determination was a reasonable one. Therefore, the Court will not remand this matter for further proceedings concerning what, if any, greater

amount of relief should have been granted Plaintiff in FEA–248.

9. The 1.5 cent per gallon exception relief granted in FEA–248 was retroactive, and therefore could be used to justify Plaintiff's MLSPs for NGLPs sold for all of 1974. The language of the Decision and Order in FEA–248 is ambiguous, because it failed to explain how the 1.5 cent per gallon relief was to be applied, and further failed to define with specificity whether the relief was prospective, or whether rather it was retroactive for the year 1974, or for some other time period. Defendants now claim that the relief was prospective only.

Generally, a Court will defer to an agency's construction of its own regulation or order. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Mountain Fuel Supply Co. v. D.O.E.*, 656 F.2d 690, 694–695 (TECA 1981); *Grigsby v. D.O.E.*, 585 F.2d 1069, 1074–1075 (TECA 1978); *Jicarilla Apache Tribe v. F.E.R.C.*, 578 F.2d 289, 292–293 (10th Cir.1978). However, this is not a hard and fast rule of law, and the Court may overrule an agency's construction of its own regulation or order where such construction is plainly erroneous or inconsistent with agency regulations or orders. *Skidmore v. Swift and Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Standard Oil Co. v. D.O.E.*, 596 F.2d 1029, 1055–1056 (TECA 1978). The Court will exercise less deference where the agency's construction is not a long-standing one, and need not defer to the agency's construction where it is inconsistent with earlier pronouncements made by the agency. *Id.*, *Bowles v. Seminole Rock Co. and Sand*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). This is especially true where, as here, the agency's current position would subject the Plaintiff to the substantial burden of incurring penalties due to the Defendants' retroactive change in its construction of the Decision and Order in FEA–248. *Skidmore v. Swift and Co., supra*, 323 U.S. at p. 140, 65 S.Ct. at p. 164; *Mountain Fuel Supply Co. v. D.O.E., supra* at p. 696 (Jameson, J. dissenting).

That, after all these years, would be inequitable.

■ Furthermore, the original construction of the Decision and Order in FEA–248 by FEA's highest ranking officials in its national office, and its Region VIII and Region IX Offices, constitute contemporaneous constructions of such Decision and Order by its draftsmen, which are more persuasive concerning the proper meaning of such Decision and Order than the agency's present construction. *Standard Oil Co. v. D.O.E., supra.* In light of the contemporaneous construction given the Decision and Order by FEA's highest ranking officials, and in light of the fact that the Defendants' current construction would ignore the substantial losses incurred by Plaintiff prior to November 22, 1974, the Court is convinced that the proper construction of the Decision and Order in FEA–248 allowed Plaintiff to use the 1.5 cent per gallon relief to justify its MLSPs for its NGLPs for all of 1974.

■ 10. Even assuming that Defendants' current position correctly construed the Decision and Order in FEA–248 as only providing prospective relief, Defendants would still be estopped from denying that such relief could be applied retroactively to justify Plaintiff's MLSPs for all of 1974. As a general rule, an administrative agency is not precluded from changing a prior position taken by it in the same proceeding, or in a separate proceeding. *Chisholm v. Defense Logistics Agency,* 656 F.2d 42 (3rd Cir.1981); *Jones v. Califano,* 576 F.2d 12 (2nd Cir.1978); *Interstate Contract Carrier Corp. v. United States,* 389 F.Supp. 1159 (D.Utah 1974). Where, under some circumstances a change in position by an agency would be arbitrary and capricious, the agency is bound to its prior position. *Id.* Principles of estoppel may be applied against a governmental agency during the course of litigation, provided that the challenging party shows that there was affirmative misconduct on the part of the agency, in addition to the general elements of estoppel. *F.C.I.C. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947);

*Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States,* 681 F.2d 746 (Ct.Cl.1982); *United States v. Ruby Co.,* 588 F.2d 697 (9th Cir. 1978), cert. den. 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Davis, Administrative Law Treatise,* (2d Ed.1983) Sections 20:1 to 20:6. While Courts under some circumstances have refused to apply the estoppel doctrine against administrative agencies, the Court believes that such doctrine should be applied to the facts presented in this matter. Here Plaintiff turned to the highest ranking officials in FEA for guidance concerning the proper application and effect of the Decision and Order in FEA–248. Such officials, as the draftsmen of such Decision and Order, would logically have known its proper intent, and while acting within the scope of their authority they represented to the Plaintiff that such relief could be applied retroactively. Such representations induced the Plaintiff to apply the 1.5 cent per gallon relief to justify all of its 1974 MLSPs for its NGLPs. Neither the representation made by such officials nor the resultant conduct induced thereby violated any regulation, order or statute of which the Plaintiff had constructive notice. Neither the public treasury nor public lands, nor any other equally substantial governmental interest would be affected by the estoppel, since the Defendants seek restitution on behalf of those wholesalers who purchased NGLPs from the Plaintiff rather than restitution to or from any governmental agency. The Plaintiff has shown the existence of the general elements of estoppel, because the representations made by FEA's officials induced the Plaintiff to take action as a result of which Plaintiff would now suffer injury if it were required to make restitution to its wholesale purchasers. *United States v. Ruby, supra.* Defendants' conduct in seeking to penalize Plaintiff for action taken in reliance upon their prior representations, and in seeking to apply retroactively their new

construction of the Decision and Order in FEA–248, is arbitrary and capricious, and such conduct justifies application of the estoppel doctrine in this instance. *Boston Edison Co. v. F.P.C.*, 557 F.2d 845 (D.C. Cir.1977), cert. den. sub. nom. *Town of Norwood, Mass. v. Boston Edison Co.*, 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977); *Corniel-Rodriguez v. I.N.S.*, 532 F.2d 301 (2d Cir.1976); *Molton, Allen and Williams, Inc. v. Harris*, 613 F.2d 1176, 1179 (D.C.Cir.1980); *Laguna-Hermosa Corp. v. Martin*, 643 F.2d 1376 (9th Cir. 1981); *N.L.R.B. v. Magestic Weaving Co.*, 355 F.2d 854, 859–861 (2d Cir.1966); *Retail, Wholesale and Dept. Store Union v. N.L.R.B.*, 466 F.2d 380 (D.C.Cir.1972); *Otter Tail Power Co. v. F.E.R.C.*, 583 F.2d 399, 408 (8th Cir.1978), cert den. 440 U.S. 950, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979); *Squaw Transit Co. v. United States*, 574 F.2d 492 (10th Cir.1978).

11. Defendants argue the exception relief granted Plaintiff in FEA–248 was only applicable to computations of MLSPs under Subpart E and was automatically terminated upon issuance of new Subpart K, and that therefore the Plaintiff could not use such relief after January 1, 1975 in conjunction with the provisions of Subpart K. This construction of the Decision and Order in FEA–248 is erroneous and is inconsistent with the clear and unambiguous language of the FEA's Order; also, it is contrary to the contemporaneous construction given to such Order by FEA's highest ranking officials. Though the Decision and Order states that the 1.5 cent per gallon relief was to be used in conjunction with pricing under Section 212.82 (Subpart E), it then goes on to state, at page 6 paragraph 5 (Administrative Record at p. 283) as follows:

(5) In the event the F.E.A. promulgates new, generally applicable regulations which govern the determination of the maximum permissible selling prices of propane, butane and natural gasoline, the *F.E.A. may by written order rescind this interim exception approval in whole or in part;* provided that, prior to

taking any such action, the F.E.A. shall inform McCulloch Gas Processing Corporation of the proposed action and afford MGPC of an opportunity to comment upon the proposed action." (Emphasis supplied).

The Decision and Order itself contemplated continuation of the exception relief *after* adoption of new Subpart K, for it stated that such exception relief could be terminated only after the following events transpired: (a) promulgation of new Subpart K; (b) *subsequent* notice by FEA to Plaintiff of its intent to terminate the relief, and an opportunity being afforded to Plaintiff to comment upon such proposed action; (c) *subsequent* issuance of a written order rescinding such relief. Agency orders have the force and effect of law, and are binding upon the agency unless effectively rescinded in compliance with applicable administrative procedures. *United States v. Nixon*, 418 U.S. 683, 694–696, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *United States v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Chapman v. Sheridan-Wyoming Coal Co. Inc.*, 338 U.S. 621, 629, 70 S.Ct. 392, 396, 94 L.Ed. 393 (1950). Thus Defendants, since they expressly provided that the exception relief granted in FEA–248 would continue in effect after adoption of new Subpart K, and until effectively rescinded, should not now be permitted to alter, unilaterally and in violation of applicable procedural requirements, such Decision and Order so as to preclude the exception relief in conjunction with Subpart K.

12. Even assuming Defendants' construction of the Decision and Order in FEA–248 was proper, Defendants would be estopped from denying that such relief could be applied prospectively in conjunction with the relief provided by new Subpart K. The principles of estoppel, herein noted, are applicable to this question, since FEA's highest ranking officials represented to the Plaintiff that such relief could be

applied prospectively into 1975 in conjunction with the provisions of Subpart K. Defendants cannot now penalize the Plaintiff for conduct induced by such representations.

 13. Defendants contend that the exception relief granted in FEA–248 could not be applied in conjunction with the additional relief provided by the Class Exception for the year 1974. Basically this construction of the Decision and Order in FEA–248 hinges upon Defendants' basic contention that such relief applied only to Plaintiff's pricing under Subpart E. Defendants urge that since the Class exception gave the provision of Subpart K retroactive effect, Plaintiff was required to choose between the relief granted by the Class Exception and the relief granted by FEA–248. As was noted above, this construction is erroneous. Defendants pointed to no language in Subpart K, nor in the Decision and Order in FEA–248, nor in the Class Exception, which indicates that such provisions are intended to be exclusive of any other relief granted by FEA. Furthermore, Defendants' current position ignores the contemporaneous construction given the Class Exception by FEA's officials when they represented to the Plaintiff that it could use the 1.5 cent per gallon relief in conjunction with its pricing under the Class Exception. That contemporaneous construction of the Class Exception also deserves weight in that it was made by the draftsmen of the Class Exception as well as the Decision and Order in FEA–248. Therefore the Defendants' current construction of the Decision and Order in FEA–248 is erroneous, and inconsistent with the agency's previous position. The Court concludes that exception relief granted Plaintiff in FEA–248 could be applied in conjunction with the additional relief provided by the Class Exception.

14. Assuming the Defendants' construction of the Decision and Order in FEA–248 and of the Class Exception were reasonable, Defendants would still be estopped from denying that the 1.5 cent per gallon relief could be applied in conjunction with the additional relief afforded by the Class Exception. The principles of estoppel, set forth above, are equally applicable to this question since Defendants' highest ranking officials represented to the Plaintiff that the 1.5 cent per gallon relief could be applied in conjunction with the provisions of the Class Exception. Defendants should not now penalize the Plaintiff for conduct induced by such representations.

 15. By the express language of FEA in its order, effective termination of the exception relief granted Plaintiff in FEA–248 required Defendants to (a) promulgate new Subpart K, (b) notify Plaintiff of its intent to terminate such relief, (c) afford Plaintiff of an opportunity to comment upon such intent, and (d) to issue a subsequent written order rescinding such relief. The Decision and Order in FEA–248, at p. 6 paragraph 5, supra, defines the procedure by which the agency could effectively terminate such exception relief. Such provision was set forth in a final, binding, formal ruling of the agency, and therefore binds the agency until effectively rescinded or terminated. *United States v. Nixon, supra; United States v. Shaughnessy, supra; Internal Revenue Service v. Dulles, supra; Vitarelli v. Seaton, supra; Chapman v. Sheridan-Wyoming Coal Co., supra.* Agency action taken in violation of its own binding rules and orders is null and void, and is of no effect. *Id.* Defendants now contend that the 1.5 cent per gallon relief was automatically terminated upon the issuance of new Subpart K on January 1, 1975. This construction of the Decision and Order is erroneous, and inconsistent with the contemporaneous construction given the Decision and Order by FEA's highest ranking officials, and therefore the Court will not defer to it.

16. Even assuming Defendants' current construction of paragraph 5 of the Decision and Order in FEA–248 was reasonable, Defendants would still be estopped from denying that such exception relief could not be terminated except by the procedures set forth above. The principles of estoppel, set forth above, are equally applicable to this

question since FEA's officials represented to the Plaintiff that the exception relief could not be terminated unless this procedure was followed. Defendants' failure to follow this procedure induced the Plaintiff to continue to apply the 1.5 cent per gallon relief since it was under the impression that such relief was never effectively terminated by the Defendants. Defendants cannot now penalize Plaintiff for conduct induced by such representations.

■■■ 17. The exception relief granted Plaintiff in FEA–248 was never effectively terminated by DOE or its predecessor agencies. Therefore, it continued in effect until January 28, 1981 when DOE's price control authority was terminated by Executive Order No. 12,287. FEA issued a Supplemental Order in FEA–248 on March 6, 1975 which purported to terminate the exception relief retroactively effective January 1, 1975. Such Supplemental Order construes the Decision and Order in FEA–248 in a manner inconsistent with the written terms of the Order, and the contemporaneous construction of the Decision and Order previously given by FEA's officials. While correspondence between Plaintiff and FEA may have indicated that there was much confusion within the FEA concerning the proper application and effect of the Decision and Order in FEA–248, neither FEA nor DOE ever notified Plaintiff that they intended to terminate the exception relief prior to March 3, 1975. The March 6, 1975 Supplemental Order for the first time invited the Plaintiff to comment upon FEA's proposed termination of the relief. Then, when Plaintiff did respond, FEA failed to follow up on that correspondence by issuing a written order terminating the relief granted in FEA–248. In fact, FEA and DOE never did respond to the Plaintiff's contentions in opposition to the termination of the relief. Defendants now contend that FEA informally reviewed the materials submitted by Plaintiff, and found that they "failed to show cause" why the relief should not be terminated, and then informally finalized the termination of the exception relief ten days after service of the Supplemental Order upon the Plaintiff.

However, that procedure, if it did occur, was not in conformity with the requirement of the Decision and Order in FEA–248 that FEA terminate such exception relief by written order following notice and an opportunity to respond. By Defendants' own admission, the written order preceded the opportunity to comment, and Plaintiff never received a response to the materials submitted in response to the written order. Although Defendants were not required to issue formal findings of fact and conclusions of law under these circumstances, due process and applicable rules of procedure and fairness required them to issue some informal statement or notice explaining why the Plaintiff's materials were insufficient, and why it determined to proceed to terminate the exception relief, and decisions made in contravention of this requirement are arbitrary and capricious. *Morgan v. United States,* 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Portland Cement Assn. v. Ruckelshaus,* 486 F.2d 375 (D.C.Cir.1973) cert. den. 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226, appeal after remand 513 F.2d 506, cert. den. 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399; *Nutritional Foods Assn. v. Weinberger,* 512 F.2d 688 (2d Cir.1975), cert. den. 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44, on remand 418 F.Supp. 394, appeal after remand 557 F.2d 325 (2d Cir.1977); *Westchester Gen. Hosp., Inc. v. Department of Health, Ed. and Welfare,* 464 F.Supp. 236 (M.D.Fla. 1979). Whether or not Defendant acted reasonably in failing to terminate such relief is not at issue. Defendants failed to comply with the terms of their own binding order, and therefore action taken by Defendants in contravention of such order is null and void, and did not effectively terminate such relief. *Kelly v. Railroad Retirement Board,* 625 F.2d 486 (3rd Cir.1980). Furthermore, its attempt to informally terminate such relief without responding to the materials submitted by the Plaintiff, and without issuing an informal statement explaining why it determined that termina-

tion of such relief was justified, was ineffective, arbitrary and capricious. Therefore, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment, to the extent it pertains to the reasonableness of the amount of exception relief granted in FEA–248, be, and the same hereby is, denied. It is further

ORDERED that the remainder of Plaintiff's Motion for Summary Judgment be, and the same hereby is, granted. It is further

ORDERED that Defendants' Motion to Strike, or in the Alternative for Leave to Take Discovery in Accordance with Rule 56(f) be, and the same hereby is, denied. Judgment shall be entered in accordance with these Findings of Fact and Conclusions of Law.

### JUDGMENT

This action came on for hearing before the Court, the Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming presiding, and the issues having been duly heard, and a decision having been duly rendered; it is

ORDERED, ADJUDGED and DECREED that plaintiff's Complaint, to the extent it requests the Court to declare that the 1.5 cent per gallon exception relief granted plaintiff in FEA–248 was unreasonably low in amount or was arbitrary and capricious, and not supported by substantial evidence in the record as a whole, under the circumstances present at that time it was granted, be, and the same hereby is, dismissed with prejudice. It is further

ORDERED, ADJUDGED and DECREED that the November 22, 1974 Decision and Order in FEA–248 permitted plaintiff to apply the 1.5 cent per gallon exception relief granted therein retroactively to justify its Maximum Lawful Selling Prices for all of calendar year 1974, and prospectively into 1975 and thereafter, until effectively terminated in compliance with the terms and conditions of such Decision and Order; that the November 22, 1974 Decision and Order in FEA–248 permitted Plaintiff to apply the 1.5 cent per gallon exception relief in conjunction with the additional relief provided by Subpart K and the Class Exception; that the 1.5 cent per gallon exception relief granted plaintiff in FEA–248 was never effectively terminated by the Department of Energy, or any of its predecessor agencies, in compliance with the terms and conditions of the November 22, 1974 Decision and Order issued in such proceeding, and therefore continued in effect until January 30, 1981 when the Department of Energy's price control powers were terminated. It is further

ORDERED, ADJUDGED and DECREED that the Department of Energy, its officers and employees, are hereby permanently enjoined from issuing any decision or order, or from otherwise proceeding in any manner not consistent with the Court's construction of the November 22, 1974 Decision and Order in FEA–248 as set forth herein. It is further

ORDERED, ADJUDGED and DECREED that plaintiff recover its costs herein.