## GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

## DANTE FABIANI–OGNO, LINDA J. LUEDLOFF & BRUNO VINCENT OGNO, Defendants

Criminal Nos. F.88, 89 & 90-1983

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 29, 1984

404

LAWRENCE SPIVACK, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for plaintiff*

WILLIAM HELLER, ESQ., St. Thomas, V.I., *for defendants*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### I.

In this opinion the court makes clear the distinction between the exceptions to the warrant requirement and the exceptions to the exclusionary rule. This distinction is significant because a holding that a search and seizure is illegal does not automatically mean that the evidence must be suppressed under all circumstances or for all purposes.

Here, three consolidated cases are before the court on the defendants' motion to suppress contraband seized without a warrant. They contend that the search which produced the contraband violated their Fourth Amendment rights, and hence, such evidence should be suppressed at trial. The government admits that the search was conducted without a warrant, but contends that the search is permissible under several exceptions to the warrant requirement. Moreover, the government alleges that even if the search was illegal the evidence should be admissible for total or partial use against the defendants, in accordance with the various exceptions to the suppression doctrine.

For the reasons which follow, the court holds that both the search and seizure were illegal, and that although the illegally seized evidence must be suppressed during the government's case in chief, it is admissible during the defendant's case for the prevention of perjury and for impeachment purposes.

## II.

On August 17, 1983, at approximately 12:00 noon, the director of the Narcotics Strike Force received a telephone call from the director of the Community Crime Watch organization which stated that they had received information from an unidentified concerned citizen claiming that a blue vessel, called the "Ursula" and located in Benner Bay, would be traveling to Jersey Bay with 50 lbs. of marijuana on board. The unidentified informant had also reported to the crime watch organization that Dante Fabiani would be on board. Around 4:30 p.m. the same day, while accompanied by a customs agent, agents of the Narcotics Strike Force and law enforcement officials from the federal Drug Enforcement Agency sited the "Ursula" anchored in Benner Bay at which time three of the narcotics agents boarded the vessel and asked if anyone was on board. In response, a female named Linda Luedloff, came from below deck, and upon inquiry by the agents advised them that no one else was on board. The agents then proceeded to search both the upper and lower decks of the vessel. No inquiry was made about vessel documentation or reasons for presence in the area. Shortly thereafter, one of the two agents who went below shouted that he had found some marijuana, which totaled about 5 lbs. He also stated that he first saw a red and blue bag which was unzipped, so that he could see part of a white box which was in the bag, as well as part of a clear plastic bag which contained what appeared to be marijuana. Upon searching further, he found in the white box additional plastic bags containing marijuana. He thereafter seized the bag and its contents.

During this time, the only customs agent in the group still had not boarded the vessel nor made any custom inquiry. After the agents came on the upper deck with the marijuana that was found below, they placed defendant Luedloff under arrest. By that time the customs agent had boarded the vessel and defendant Bruno Ogno was approaching the vessel in a dinghy accompanied by a female child. After they boarded, a request was then made for vessel documentation by the customs agent. The documentation was presented by defendant Bruno Ogno, who was also arrested. Sometime later, Dante Fabiani-Ogno was also apprehended and all three defendants were charged with possession of a controlled substance with intent to distribute.

The defendants have been using the vessel as a houseboat. It had been at permanent anchor in Benner Bay and the defendants had

been living there for approximately two years at the time of the arrest. The vessel was not seaworthy and there were no signs of activities that would indicate an attempt by the defendants to move the vessel from anchor. The marine operator of the Benner Bay Mariner, who had sold the vessel to the defendants, verified that they resided on board the boat, that they had no other home on shore, and that they constantly maintained it as their residence.

The narcotics agents did not attempt to obtain a warrant during the four hours between obtaining the information and searching the vessel, and have stated their belief that as long as a customs agent accompanied them there was no need for a search warrant. The defendants contend that under the circumstances of this case a search warrant was required.

### III.

■■■ The Fourth Amendment to the Constitution of the United States, which is made applicable to the Virgin Islands by § 3 of the Revised Organic Act of the Virgin Islands, establishes the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. The U.S. Supreme Court has held that a search is per se unreasonable, and thus violates the Fourth Amendment, if the police making the search had not first secured from a neutral magistrate a warrant that satisfies the terms of the warrant clause of the Fourth Amendment. Katz v. United States, 389 U.S. 347 (1967). Nevertheless, the Court has identified certain exceptions to the warrant requirement, and the search without a warrant can survive a constitutional challenge only upon a showing that the surrounding facts brought it within one of those exceptions to the rule that the search must rest upon a search warrant. Stoner v. California, 376 U.S. 483 (1964). Moreover, the government bears a heavy burden to prove the need for an exemption from the warrant requirement when it seeks to justify warrantless searches and seizures. United States v. Coker, 599 F.2d 950 (10th Cir. 1979).

Of the various exceptions to the warrant requirement which have been recognized by the Supreme Court, the government in this case relies upon three, namely: (1) exigent circumstances (2) customs search and (3) the plain view doctrine. However, none of these exceptions has been satisfied under the circumstances of this case.

■■■ Under the exigent circumstances exception, a warrantless search is permissible only when there are both probable cause and exigent circumstances. Warden v. Hayden, 387 U.S. 294 (1967);

Arkansas v. Sanders, 442 U.S. 753 (1979). Neither element of this exception has been established because the third-hand information received by the Joint Narcotics Strike Force from an unidentified informer with no prior proof of reliability or creditability, and with no significant corroborating facts, amount to mere suspicion and cannot of itself constitute probable cause. Similarly, since the information was received by the Strike Force around 12:00 noon and since it was not until 4:30 p.m. that the boat was boarded there was no exigent or emergency situation that would justify their failure to obtain a warrant. Indeed, within those same hours a warrant could have been obtained if there was sufficient probable cause. Moreover, since the evidence shows that the boat was used by defendants as their home for more than one year, it was not likely from the facts presented that it would be leaving this jurisdiction that same day. It is clear, therefore, that the exigent circumstances exception cannot apply.

With respect to the customs search exception, the government asserts that the search was a customs or border search made pursuant to 19 U.S.C. § 1581(a) (1971). In the case of United States waters leading to the open sea, customs officials are permitted to stop and board any vessel therein without articulable suspicion of unlawfulness for the purpose of document inspection. United States v. Villamonte-Marquez, 51 U.S.L.W. 4812 (1983). The territory of the U.S. Virgin Islands constitutes a border within the meaning of the border search exception to the warrant requirement. United States v. Chabot, 581 F.Supp. 1063. Here, it is clear that the customs agent did not board the boat until after the narcotics officers had already boarded and commenced their search of the vessel for the contraband. Moreover, no document inspection took place until after the seizure was made and defendant Luedloff had been arrested. Thus, it appears that the police used the presence of the customs officer as a substitute for a warrant, in the mistaken belief that it would legitimize the failure to secure a warrant and the resulting illegal search. Confirmation that a certain boat is present in a local bay does not sufficiently corroborate an unidentified informant's tip alleging the presence of marijuana on board the boat so as to create a reasonable suspicion of criminal activity. Indeed, the boat was at anchor, was the home of the defendants, and was not in transit as alleged by the informant. Unlike the case in Villamonte-Marquez, supra, therefore, there was nothing to justify a stop or boarding of the defendants' boat here. Thus, the claim that the customs or

border search exception applies in this case must likewise be rejected.

██ ██ Finally, the government contends that the search here is legal under the plain view exception to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443 (1971). Coolidge teaches us that the plain view doctrine requires more than seeing contraband in plain view. It requires proof of the following four factors:

1. That the initial intrusion by the officers was legal.
2. That the evidence was inadvertently discovered.
3. That the evidence appeared to be incriminating.
4. That the evidence was plainly visible to the officers.

See, Robbins v. California, 453 U.S. 420 (1981). The foregoing analysis of the exigent circumstances and customs search exceptions make it clear that the initial intrusion by the officers was illegal. In addition, the evidence was not inadvertently discovered because the officers were specifically searching for the marijuana based on the information they had received from the unidentified informer and because it was not located until they began searching the lower deck of the vessel. Moreover, the evidence was not visibly incriminating and was not plainly visible to the officers. Thus, the requirements of the plain view exception to the warrant requirement have not been met.

Accordingly, the failure of the law enforcement officers to secure a warrant before boarding and searching the vessel "Ursula" made the search and seizure illegal and constituted a violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

## IV.

██ One remedy for unconstitutional police action is to exclude the illegally seized evidence from admission at the criminal trial. This remedy has become known as the "exclusionary rule" and is generally raised by a motion by a criminal defendant to suppress the evidence. Weeks v. United States, 232 U.S. 383 (1914); Michigan v. Tucker, 417 U.S. 433 (1974).

██ Over the years, several exceptions to the exclusionary rule have been developed because the application of the rule has been restricted to those areas where its remedial objectives are served. Stone v. Powell, 428 U.S. 465 (1976). Thus, to prevent perjury by a defendant in reliance on the suppression of evidence during the government's case in chief, an exception was created in

411

Walder v. United States, 347 U.S. 62 (1954), to permit the use of the illegally obtained evidence during his cross-examination. In addition, an exception was created for impeachment purposes in Harris v. New York, 401 U.S. 222 (1971), in which the Court made it clear that if the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrents flow when the evidence in question is made unavailable to the prosecution in its case in chief. See also, United States v. Havens, 446 U.S. 620 (1980). Another exception was created with respect to grand jury proceedings in United States v. Calendra, 414 U.S. 338 (1974). Moreover, the exclusionary rule is not applicable to a defendant who claims its protection on the basis that the evidence was seized unlawfully from a third party who is not before the court. United States v. Payner, 447 U.S. 727 (1980). But perhaps the most evolutionary exception to the exclusionary rule is the one fashioned by the United States Court of Appeals for the Fifth Circuit in United States v. Williams, 622 F.2d 830 (5th Cir. 1980), cert. denied, 499 U.S. 1127, 101 S.Ct. 946 (1981). In this case, the court stated as follows:

> Henceforth in this circuit, when evidence is sought to be excluded because of police conduct leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question, if mistaken or unauthorized, was yet taken in a reasonable, good-faith belief that it was proper. If the court so finds, it shall not apply the exclusionary rule to the evidence.

United States v. Williams, supra, at 846–47. This exception would allow the use of the illegally seized evidence during the government's case in chief.

■ Of the foregoing exceptions to the exclusionary rule, the "prevention of perjury" exception and the "impeachment" exception, which allow the use of illegally seized evidence during the defendant's case only, are the two exceptions which are applicable in this case. This is so because sufficient deterrent to illegal police conduct flows against the government when the evidence is unavailable to the prosecution in its case in chief. Thus, the remedial objectives of the exclusionary rule would still be served.

The only other exclusionary rule exception that is relevant here is the "reasonable, good-faith belief" exception. In this case that exception cannot apply because the conduct of the officers, leading to the discovery of the marijuana, displayed a deliberate and an unreasonable attempt to circumvent the prohibition of the Fourth Amend-

ment. It is manifest that where, as here, the officers receive third-hand hearsay information from an unidentified informant, where there is ample time to secure a warrant, and where the customs agent is used as a substitute for the warrant and makes no timely demand for document inspection, it must be concluded that the police conduct was not undertaken in a reasonable, good-faith belief that it was proper.

■ Accordingly, since the only exceptions to the exclusionary rule which are applicable in this case authorize the use of the illegally seized evidence during the defendant's case only, the evidence must be suppressed during the government's case in chief.

## V.

In view of the foregoing, the court holds that both the search and seizure were illegal, that the exclusionary rule does not per se exclude all illegally seized evidence from all stages of the trial, and that under the circumstances of this case, the illegally seized evidence must be suppressed during the government's case in chief, but may be admitted during the defendant's case for the prevention of perjury and for impeachment purposes.

An order will be entered accordingly.